285 N.J. Super. 501 (1995)
667 A.2d 702
THOMAS MEROLA, APPELLANT,
v.
DEPARTMENT OF CORRECTIONS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1995.
Decided December 1, 1995.
*503 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Appellant Thomas Merola submitted pro se briefs.
Lawrence S. Lustberg argued the cause, for appellant (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Mr. Lustberg and Sylvia M. Orenstein, on the supplemental brief).
Patrick DeAlmeida, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, and Michael J. Haas, Senior Deputy Attorney General, of counsel; Mr. DeAlmeida, on the briefs).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Appellant Thomas Merola is a convicted murderer assigned to the custody of the Department of Corrections (DOC). He is currently incarcerated at the New Jersey State Prison (NJSP) in *504 Trenton. In this appeal, Merola challenges the DOC's calculation of the end date of his term of incarceration. He contends that his thirty-year mandatory minimum sentence for murder can be reduced through the application of commutation and work credits earned during his incarceration. The DOC, on the other hand, determined that Merola's period of parole ineligibility may not be reduced, either through the application of commutation credits or through the compilation of inmate work credits, below the statutorily mandated term of imprisonment for murder. We agree with the DOC.
On September 24, 1984, a jury convicted Merola of five criminal offenses: first degree murder, first degree robbery, two counts of second degree aggravated assault, and second degree possession of a firearm with a purpose to use it unlawfully against the person of another.
On November 14, 1984, the Honorable Paul T. Murphy, J.S.C., imposed sentence on Merola. For the murder conviction, Merola was sentenced pursuant to N.J.S.A. 2C:11-3b to a "term of thirty (30) years and until released in accordance with law, without parole." His conviction for possession of the firearm was merged into the robbery conviction. For his conviction for first degree robbery, Merola was sentenced to fifteen years in prison with a seven and one-half year period of parole ineligibility. For his convictions of second degree aggravated assault, he was sentenced to two seven-year terms of imprisonment with two three and one-half year periods of parole ineligibility. Merola's sentences on these other charges were to run concurrent to his sentence for murder.
On July 12, 1993, Merola wrote to the DOC requesting a "written calculation depicting the exact date of my maximum sentence minus work and commutation credits if I continue to be housed at N.J. State Prison." A Senior Classification Officer at NJSP who responded to Merola's inquiry calculated Merola's release date on the basis of the erroneous characterization of his sentence as "a 30 year term, with no mandatory minimum, using *505 your credits," mistakenly believing that Merola was not sentenced to a mandatory minimum term of thirty years. Therefore, she reduced the date for his parole eligibility by more than ten years, reflecting over 4,000 days of commutation and work credits that could have accumulated had Merola not been sentenced to a mandatory minimum term, noting that her calculation was based "on a 30 [year] flat sentence." The officer mistakenly stated that Merola's "ACTUAL MAX DATE as of 7/1/93" was July 22, 2002.
On August 8, 1993, Merola requested a clarification of the determination of his possible release date. On September 11, 1993, a Technical Assistant in the Classification Department at NJSP informed Merola that he was serving a thirty-year sentence with a thirty-year mandatory minimum term of imprisonment.
On November 1, 1993, Merola sent a letter to the DOC's Bureau of Classification and Sentencing challenging this interpretation of his sentence. In response, Merola was informed that his term of incarceration would not end until November 26, 2013, thirty years from the date of his sentencing minus credit for time he served in jail prior to his sentencing.
Merola then requested that William H. Fauver, the Commissioner of the DOC, provide yet another calculation of his release date. On June 21, 1994, Richard M. McCarron, the Administrator of Parole & Probation Programs for the DOC, informed Merola that he was serving a thirty-year term with a thirty-year period of parole ineligibility.
On July 21, 1994, Merola, pro se, filed an appeal with this court. He challenges the DOC's determination that the thirty-year mandatory minimum sentence imposed on him cannot be reduced by commutation and work credits. In his pro se briefs, Merola argues:
POINT I APPELLANT IS BEING DENIED WORK AND COMMUTATION CREDITS BECAUSE THE DEPARTMENT OF CORRECTIONS INCORRECTLY HAS HIS PRISON SENTENCE PORTRAYED AS A 30 YEAR MANDATORY MINIMUM.
POINT II THE FINAL DECISION OF THE DEPARTMENT OF CORRECTIONS SHOULD NOT BE AFFIRMED BECAUSE APPLICABLE STATUTORY *506 PROVISIONS CLEARLY DO NOT PROHIBIT THE REDUCTION OF A MAXIMUM SENTENCE, (AS OPPOSED TO A MANDATORY MINIMUM TERM), THROUGH THE APPLICATION OF WORK AND COMMUTATION CREDITS.
POINT III THE STATUTES AND REGULATIONS AT ISSUE PROVIDE A LIBERTY INTEREST IN WORK AND COMMUTATION CREDITS TO ALL NEW JERSEY STATE PRISONERS EXCEPT THOSE SPECIFICALLY EXEMPTED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
In a supplemental brief, Merola's pro bono counsel[1] argues:
POINT I THE DOC'S ERRONEOUS INTERPRETATION OF THE STATUTE UNDER WHICH MEROLA WAS SENTENCED IS ENTITLED TO NO DEFERENCE AND ITS DETERMINATION SHOULD BE REVERSED.
A. The statutory provision under which Merola was sentenced does not specify a mandatory minimum; any decision which construes it as containing such a limitation is merely a result of the statute's ambiguity.
B. The DOC's interpretation would impermissibly render part of N.J.S.A. 30:4-123.51 meaningless in this case.
C. A denial of work and commutation credits to Merola would contravene strong public policy and the stated purposes of the Penal Code.
POINT II THE DOC'S DECISION WOULD DEPRIVE MEROLA OF SIGNIFICANT CONSTITUTIONAL RIGHTS.
A. Merola has State-created liberty and property interests in the work and good time credits he has earned.
B. The DOC's disparate treatment of Merola and others sentenced under N.J.S.A. 2C:11-3b not only lacks a rational relationship to a legitimate State objective but in fact subverts legislative intent.

I.
The sentence imposed on Merola for his murder conviction was clear: a "term of thirty (30) years and until released in accordance with law, without parole." The language used by the sentencing court was unambiguous in its intention to impose a mandatory minimum term of thirty years of incarceration.
Merola was sentenced pursuant to N.J.S.A. 2C:11-3b, which sets forth the appropriate punishments for murder. The statute provides for the imposition of a death sentence as well as *507 two alternatives, both of which must include a thirty-year mandatory minimum term of imprisonment.
A mandatory term for murder is entirely consistent with the plain language of N.J.S.A. 2C:11-3b, as well as with the legislative history of that statute when it was enacted in its current form, and a long series of judicial opinions interpreting the statute as imposing a mandatory minimum term of thirty years incarceration for those murderers not sentenced to death. Thus, the sentence imposed on Merola was entirely appropriate and consistent with N.J.S.A. 2C:11-3b.
Murder is a crime of the first degree but a person convicted of murder shall be sentenced, except as provided in subsection c. of this section [provisions allowing for imposition of death], by the court to a term of 30 years, during which the person shall not be eligible for parole or to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.
[N.J.S.A. 2C:11-3b.]
The language of N.J.S.A. 2C:11-3b is plain and requires no interpretation. A convicted murderer not sentenced to death must be sentenced to either thirty years of imprisonment or a term of incarceration between thirty years and life. In either instance, however, the murderer is not eligible for release from prison prior to thirty years of incarceration.
The use of the term "not eligible for parole" in a sentencing statute unquestionably denotes a mandatory minimum sentence. In State v. Davis, 175 N.J. Super. 130, 417 A.2d 1075 (App.Div.), certif. denied, 85 N.J. 136, 425 A.2d 291 (1980), we interpreted the predecessor to N.J.S.A. 2C:11-3b to require the imposition of a mandatory minimum period of incarceration. Id. at 142-43, 417 A.2d 1075. Simply put, the New Jersey Code of Criminal Justice (Code), N.J.S.A. 2C:1 to:104-9, does not permit convicted murderers to receive any sentence less than thirty years of incarceration.
In addition, an examination of the legislative history behind the statute undeniably indicates that anyone not sentenced to death for a murder conviction must serve thirty years of incarceration *508 prior to release. When enacting N.J.S.A. 2C:11-3b, the Legislature made it plain that convicted murderers would have to remain in prison for a minimum of thirty years. At the time that this statute was amended and New Jersey's death penalty legislation was enacted, both effective August 6, 1982, the Legislature and the Governor expressly stated that N.J.S.A. 2C:11-3b provided for mandatory minimum sentences for all convicted murderers not sentenced to death.[2]
New Jersey courts have consistently held that N.J.S.A. 2C:11-3b imposes a thirty-year mandatory minimum sentence on noncapital murderers. In State v. Ramseur, 106 N.J. 123, 524 A.2d 188 (1987), the Supreme Court clearly indicated that the statute required the imposition of a mandatory minimum term of thirty years in the absence of a death sentence. Id. at 154-55, 524 A.2d 188. That position has been reaffirmed in numerous cases. See State v. Brown, 138 N.J. 481, 511, 651 A.2d 19 (1994) (holding that a defendant found guilty of murder not by his own conduct is subject to "imprisonment of at least a thirty-year mandatory term"); accord State v. Dunne, 124 N.J. 303, 320, 590 A.2d 1144 (1991) (explaining that a "sentence of thirty years without parole [is] required for murder under N.J.S.A. 2C:11-3"); State v. Rodriguez, 97 N.J. 263, 274 n. 4, 478 A.2d 408 (1984) (holding that N.J.S.A. 2C:11-3b requires "a minimum sentence of thirty years without parole eligibility"); State v. Johnson, 206 N.J. Super. 341, 343, 502 A.2d 1149 (App.Div. 1985), certif. denied, 104 N.J. 382, 517 A.2d 390 (1986) (rejecting defendant's assertion that the statute's thirty-year minimum sentence without parole eligibility is violative of the Eighth Amendment); see also State v. Rogers, 236 N.J. Super. 378, 381, 565 A.2d 1128 (App.Div. 1989), aff'd, 124 N.J. 113, 590 A.2d 234 (1991) (stating that "the extraordinarily long term of 30 years without parole is the minimum statutory sentence" for *509 murder). Indeed, the Supreme Court has termed non-death sentences under N.J.S.A. 2C:11-3b as the "most severe sanction short of death: a custodial term ranging from thirty years without parole to life imprisonment with a thirty-year parole disqualifier." State v. Gerald, 113 N.J. 40, 89, 549 A.2d 792 (1988).
This construction of the statute is so well accepted that defendants facing the death penalty frequently have requested jury instructions that specify that a rejection of the death penalty will result in a mandatory minimum of thirty years of imprisonment. See State v. Martini, 131 N.J. 176, 364, 619 A.2d 1208 (1993), cert. denied, ___ U.S. ___, 116 S.Ct. 203, ___ L.Ed.2d ___ (1995) (where the Court clearly stated that N.J.S.A. 2C:11-3b imposes a mandatory minimum term of incarceration of thirty years in lieu of a death sentence).

II.
The Legislature has enacted unambiguous statutes prohibiting the reduction of mandatory minimum sentences through the application of commutation and work credits. Those provisions clearly declare that commutation and work credits cannot reduce a statutorily or judicially-imposed mandatory minimum term of imprisonment.
Pursuant to N.J.S.A. 30:4-140 and N.J.S.A. 10A:9-5.1(a), inmates are credited with commutation time for continuous orderly behavior. In addition, pursuant to N.J.S.A. 30:4-92 and N.J.A.C. 10A:9-5.1(b), inmates are required to be employed in productive occupations and are entitled to receive compensation for their work either in the form of cash or remission of time from their sentence.
However, applicable statutes and regulations prohibit the use of commutation and work credits to reduce statutorily-imposed mandatory minimum sentences. For instance, N.J.S.A. 30:4-123.51 sets forth a clear limit on the relationship between commutation and work credits and mandatory minimum sentences.

*510 [e]ach adult inmate sentenced to a ... specific term of years ... shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, or one third of the sentence imposed where no mandatory minimum term has been imposed less commutation time for good behavior... and credits for diligent application to work and other institutional assignments....
[N.J.S.A. 40:123.51a.]
This statute also contains an express prohibition cautioning that
"[c]onsistent with the provisions of the New Jersey Code of Criminal Justice (N.J.S. 2C:11-3, 2C:14-6, 2C:43-6, 2C:43-7), commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term.
[N.J.S.A. 40:123.51a.]
The Administrative Code reiterates this statutory mandate: "[c]ommutation credits are not awarded until after the expiration of the mandatory minimum portion of the sentence. When the mandatory minimum portion of the sentence has been served, commutation credits are awarded on the full sentence." N.J.A.C. 10A:9-5.1(a)2. In addition, N.J.A.C. 10A:9-5.2(c) provides that "[i]n no case may commutation credits [or] work credits ... be used to reduce a maximum sentence to a period of incarceration that is less than the judicial or statutory mandatory minimum term."
The Parole Act of 1979, N.J.S.A. 30:4-123.45 to .69, of which N.J.S.A. 30:4-123.51(a) is a part, explicitly recognizes that "no provisions of the New Jersey Code of Criminal Justice shall be superseded hereby." N.J.S.A. 30:4-123.69. Thus, the Legislature could not have made any clearer its intention to prohibit the reduction of mandatory minimum sentences through application of commutation and work credits. When an inmate is sentenced to a mandatory minimum term, any commutation and work credits earned will be awarded upon the expiration of the mandatory minimum term for application to the remainder of the sentence. In Merola's case, since the full sentence and the mandatory minimum term are of the same length, he simply cannot reduce his thirty-year sentence.
We especially reject Merola's argument that if his thirty-year sentence is construed as both a maximum and a mandatory *511 minimum, as the DOC has done, effect is not given to the second part of N.J.S.A. 30:4-123.51(a) because, Merola argues, commutation and work credits cannot be awarded "subsequent to the expiration of the [mandatory minimum] term."
First, in addition to Merola's thirty-year mandatory minimum sentence for murder, he is serving three additional sentences for other offenses, each with a mandatory minimum term of shorter duration than the full sentence for those crimes. At the end of the mandatory minimum terms for each of those sentences, Merola is entitled to have any commutation and work credits he may have earned applied towards the reduction of those sentences. Although Merola is serving those sentences concurrently with his imprisonment for murder, calculation and application of commutation and work credits for the shorter terms is necessary to properly determine Merola's term of imprisonment should his sentence for murder ever be vacated, reversed or pardoned. Thus, the relevant part of N.J.S.A. 30:4-123.51(a) would apply to Merola at the end of each mandatory minimum term that he is serving.
Second, the portion of the statute that Merola claims would be rendered inoperative follows an explicit declaration that commutation and work credits may not reduce mandatory minimum terms of incarceration. The mandate to award commutation credits after expiration of any mandatory minimum term was clearly intended to apply only to sentences with mandatory minimum terms of shorter duration than the entire sentence.
Third, regardless of whether N.J.S.A. 2C:11-3b and N.J.S.A. 30:4-123.51(a) are incompatible or even whether a portion of N.J.S.A. 30:4-123.51(a) is inoperative with respect to inmates serving mandatory minimum terms of the same length as their complete sentences, the sentencing provision of N.J.S.A. 2C:11-3b must prevail. The supremacy of the Code over the statutes controlling parole and commutation credits has consistently been recognized by the Supreme Court. State v. Chapman, 95 N.J. 582, 592 n. 3, 472 A.2d 559 (1984). Moreover, N.J.S.A. 30:4-123.51(a) *512 states that it must be applied consistent with the provisions of N.J.S.A. 2C:11-3b. See Karatz v. Scheidemantel, 226 N.J. Super. 468, 472, 544 A.2d 897 (App.Div. 1988) (disallowing application of commutation and work credits to reduce a mandatory minimum term and finding no infirmity in that scheme). Thus, the mandatory minimum sentence required by N.J.S.A. 2C:11-3b simply cannot yield to any of the provisions of N.J.S.A. 30:4-123.51(a).
Such a construction is clearly consistent with the purposes of the Code. As the Supreme Court explained, murder is a deplorable offense of the highest magnitude. In order to punish individuals for such a heinous act and to deter further killing, the Legislature has properly provided for the death penalty and for those murderers not sentenced to death, the next most severe sanction, i.e., "a custodial term ranging from thirty years without parole to life imprisonment with a thirty-year parole disqualifier. N.J.S.A. 2C:11-3(b)." State v. Gerald, supra, 113 N.J. at 89, 549 A.2d 792. To permit a murderer to reduce a sentence by more than ten years through the application of commutation and work credits would belittle the magnitude of the vicious murder committed and would completely undermine the purpose and goals of the Code.

III.
Merola contends that he has a constitutionally protected interest in reducing his thirty-year mandatory minimum sentence. This argument is clearly without merit. R. 2:11-3(e)(2). Nothing in the federal or state constitutions, the controlling legal opinions, or New Jersey statutes or regulations entitle prison inmates to reduce the length of mandatory minimum sentences with commutation and work credits.
The Due Process Clause of the Fourteenth Amendment provides that a liberty interest of constitutional dimension may not be abrogated by governmental action without certain procedural protections. U.S. Const. amend. XIV. Protected liberty interests *513 may arise from two sources. First, the interest may be of such a fundamental nature that it inheres in the Constitution itself. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506, 514 (1989); Hewitt v. Helms, 459 U.S. 460, 466-67, 103 S.Ct. 864, 868, 74 L.Ed.2d 675, 685 (1983). Alternatively, in very limited circumstances, a protected liberty interest may arise from state regulations. Sandin v. Conner, 515 U.S. ___, ___, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 429-30 (1995); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2537-40, 49 L.Ed.2d 451, 458-61 (1976).
The United States Supreme Court has held that there is no federal constitutional right to good time credits. Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, 951 (1974). In addition, the United States Constitution does not guarantee an inmate with right-to-work opportunities during his incarceration. Johnson v. Fauver, 559 F. Supp. 1287, 1290 (D.N.J. 1983). If an inmate has no constitutional right to receive commutation or work credits, he or she certainly has no constitutional right to apply those credits in contravention of a state statute requiring that an inmate serve a mandatory minimum term. Merola cannot establish that he has secured a federal constitutional right to reduce his mandatory minimum sentence.
The United States Supreme Court recently placed dramatic curbs on the creation of constitutionally protected liberty interests through adoption of state regulations. In Sandin v. Conner, supra, the Court abandoned previous mechanical and impractical tests for determining whether a protected liberty interest is created by state statutes. Instead, the Court held that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which ... impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, supra, 515 U.S. at ___, 115 S.Ct. at 2300, 132 L.Ed.2d at 429-30 (citations omitted).
*514 The controlling statutes and regulations explicitly and repeatedly provide that inmates serving a mandatory minimum period of incarceration may not shorten their mandatory terms with commutation and work credits. Clearly, New Jersey has not denied a constitutionally protected right under the Due Process Clause by refusing to grant reduction of its inmates' mandatory minimum sentences through commutation and work credits.
In Davis, supra, we flatly rejected the same constitutional challenges raised by Merola. Davis asserted that the mandatory minimum term imposed on him pursuant to the predecessor to N.J.S.A. 2C:11-3b should be shortened by application of commutation and work credits. Davis, supra, 175 N.J. Super. at 142, 417 A.2d 1075. We concluded, "it is clear that the mandatory minimum term of parole ineligibility does not deprive defendant of any constitutional right." Id. at 146, 417 A.2d 1075.
Merola's claim of a denial of equal protection due to the State's refusal to apply work and commutation credits to his mandatory minimum sentence is also clearly without merit. R. 2:11-3(e)(2). We have already rejected this argument. See White v. Parole Bd., 17 N.J. Super. 580, 586, 86 A.2d 422 (App.Div. 1952); Trantino v. Department of Corrections, 168 N.J. Super. 220, 226-27, 402 A.2d 947 (App.Div.), certif. denied, 81 N.J. 338, 407 A.2d 1212 (1979). The lack of a property interest in work credits was also recognized in Rowe v. Fauver, 533 F. Supp. 1239, 1242 (D.N.J. 1982).
Where, as here, the classification is not suspect, the State need show only a rational basis for its classification. Clearly, a rational basis exists for distinguishing between inmates based on the severity of the crimes committed. The societal interest in just punishment is particularly acute when the crime committed was murder. State v. Rodriguez, supra, 97 N.J. at 277 n. 5, 478 A.2d 408; State v. Maguire, 84 N.J. 508, 520 n. 12, 423 A.2d 294 (1980). It is entirely appropriate for the Legislature to determine that convicted killers should serve thirty years of imprisonment without a reduction through commutation and work credits, while *515 allowing other inmates convicted of less serious offenses to reduce their sentences. Surely, there is nothing unconstitutional in reserving the strictest sentences for murderers.
Affirmed.
NOTES
[1] We note the excellent quality of this brief.
[2] See Senate Judiciary Committee, Statement to Senate Bill No. 112, at 1 (March 1, 1982); Assembly Judiciary Law, Public Safety and Defense Committee, Statement to Senate Bill No. 112, at 1 (May 20, 1982); Office of the Governor, Press Release, August 6, 1982.