892 A.2d 688 (2006)
383 N.J. Super. 432
STATE of New Jersey, Plaintiff-Respondent,
v.
Abdul WEBSTER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 2006.
Decided February 24, 2006.
Yvonne Smith Segars, Public Defender, attorney for appellant (Barbara A. Hedeen, Assistant Deputy Public Defender, of counsel and on the brief).
Nancy Kaplen, Acting Attorney General, attorney for respondent New Jersey Parole Board[1] (Patrick DeAlmeida, Assistant *689 Attorney General, of counsel, and Lisa A. Puglisi, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Defendant Abdul Webster has appealed from his sentence of six years in custody with an eighty-five percent period of parole ineligibility, imposed pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, following his plea of guilty to second-degree aggravated assault.
The Parole Board interprets NERA to preclude the application of commutation and work credits to the "front end" of a sentence subject to NERA so as to lessen the period of parole ineligibility, and instead recognizes those credits as applicable only to the remaining base term or "back end" of a sentence. As the result of the operation of statutory sentence maximums, which effectively require a period of custody that is less than the custodial term stated by the sentencing court, the credits thus become of little or no substantive use to an inmate, since the end of the period of parole ineligibility imposed under NERA will usually be coterminous with the maximum sentence pursuant to statute.
Defendant argues that the Parole Board's interpretation of NERA results in a denial of the benefit of credits to which the Parole Act entitles him. He argues that this interpretation is not required by NERA, which does not prohibit the application of commutation and work credits to reduce a period of parole ineligibility imposed pursuant to that statute, nor is it required by the relevant provision of the Parole Act, N.J.S.A. 30:4-123.51a. Defendant claims that the interpretation is thus contrary to law, and as a result, he is entitled either to the elimination of his period of parole ineligibility under NERA or to a declaration that commutation and work credits are applicable to reduce his period of parole ineligibility.
Defendant's challenge to the manner in which his parole eligibility date is calculated was not raised before the Parole Board, as administrative law requires. Nonetheless, because the Parole Board has filed an answering brief addressing the issues that defendant has raised, we will consider the substance of defendant's challenge in order to again clarify the interrelationship between NERA and the Parole Act and their application in sentencing. In doing so, we reject defendant's position, finding the actions of the Parole Board consonant with the provisions of both the Parole Act and NERA.
The Parole Act provides, in N.J.S.A. 30:4-140, for an award of progressive time or commutation credits for continuous orderly behavior in custody and, in N.J.S.A. 30:4-92, for an award of work credits as compensation for an inmate's employment in "productive occupations" during that period of custody.
N.J.S.A. 30:4-123.51a specifies that an inmate shall become primarily eligible for parole after serving any judicial or statutory mandatory minimum term or, in the absence of a parole disqualifier, one-third of the sentence imposed. Ibid. The statute further permits commutation and work credits to reduce that one-third term. Ibid. The statute provides in relevant part:
a. Each adult inmate sentenced to... a specific term of years at the State *690 prison or the correctional institution for women shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, or one-third of the sentence imposed where no mandatory minimum term has been imposed less commutation time for good behavior pursuant to... R.S. 30:4-140 and credits for diligent application to work and other institutional assignments pursuant to ... R.S. 30:4-92.
However, the statute precludes the use of such credits to reduce any judicial or statutory mandatory minimum term, stating:
Consistent with the provisions of the New Jersey Code of Criminal Justice (N.J.S.2C:11-3, 2C:14-6, 2C:43-6, 2C:43-7), commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term.
The Administrative Code contains a similar prohibition against the use of commutation and other credits to reduce a period of parole ineligibility, stating in N.J.A.C. 10A:9-5.1(a)2:
Commutation credits are not awarded until after the expiration of the mandatory minimum portion of the sentence. When the mandatory minimum part of the sentence has been served, commutation credits are awarded on the full sentence.
N.J.A.C. 10A:9-5.2(b) further provides:
In all cases where the sentence includes a mandatory minimum term of imprisonment, commutation credits, work credits, gap time and minimum credits may not be applied to the mandatory minimum term, but may only reduce the maximum term.
NERA, as amended in 2001 to enumerate specific crimes to which it is applicable, provides:
a. A court imposing a sentence of incarceration for a crime of the first or second degree enumerated in subsection d. of this section shall fix a minimum term of 85% of the sentence imposed, during which the defendant shall not be eligible for parole.
We have analyzed the phrase "not eligible for parole" that appears in NERA when deciding a similar challenge to the application of commutation and work credits by an inmate sentenced to thirty years without parole for murder pursuant to N.J.S.A. 2C:11-3b, a statute containing the same parole ineligibility language.[2]Merola v. Dept. of Corr., 285 N.J.Super. 501, 667 A.2d 702 (App.Div.1995). There, we stated that "[t]he use of the term `not eligible for parole' in a sentencing statute unquestionably denotes a mandatory minimum sentence." Id. at 507, 667 A.2d 702 (citing State v. Davis, 175 N.J.Super. 130, 417 A.2d 1075 (App.Div.), certif. denied, 85 N.J. 136, 425 A.2d 291 (1980)). Additionally, we rejected the argument that the defendant had a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment in the reduction of his sentence by application of commutation and work credits. We stated:

*691 The United States Supreme Court has held that there is no federal constitutional right to good time credits. In addition, the United States Constitution does not guarantee an inmate with right-to-work opportunities during his incarceration. If an inmate has no constitutional right to receive commutation or work credits, he or she certainly has no constitutional right to apply those credits in contravention of a state statute requiring that an inmate serve a mandatory minimum term.
[Id. at 513, 667 A.2d 702 (citations omitted).]
In a second related decision, we determined that gap-time credit could not be utilized to reduce a period of parole ineligibility imposed pursuant to NERA after defendant's conviction for first-degree robbery, despite the defendant's argument that the Parole Board's refusal to apply the credit to the period of parole ineligibility rendered the credit meaningless. Meyer v. N.J. State Parole Bd., 345 N.J.Super. 424, 785 A.2d 465 (App.Div.2001), certif. denied, 171 N.J. 339, 793 A.2d 717 (2002). There, we stated: "In our view, the Legislature has spoken in clear and unambiguous terms that a person convicted of a NERA offense must serve eighty-five percent of the sentence imposed before becoming eligible for release. To adopt [the defendant's] argument would be inconsistent with that clear legislative intent." Id. at 430, 785 A.2d 465.
Similarly, in Salvador v. Dept. of Corr., 378 N.J.Super. 467, 876 A.2d 309 (App. Div.), certif. denied, 185 N.J. 295, 884 A.2d 1265 (2005), when confronted with the argument that commutation and work credits should be utilized to reduce the five-year extended period of parole supervision imposed upon defendant because of his NERA sentence for robbery, we acknowledged our determination in Meyer that such credits could not be utilized to reduce the period of parole ineligibility resulting from a NERA sentence. Id. at 469, 876 A.2d 309.
We see no reason to diverge from precedent in the present case finding, contrary to defendant's argument, evidence of a clear intent by the Legislature when enacting NERA in 1997 to require defendants subject to the Act's provisions to serve the full eighty-five percent period of their parole disqualification prior to any release from custody.
NERA was introduced and adopted following a number of well-publicized murders of New Jersey children, and it constituted a legislative response to the position of increasingly vocal victims rights representatives that sentences for violent crimes were inadequate and were unjustifiably reduced by the application of credits such as those awarded for good behavior and for work in prison. See Stacey L. Pilato, Note, New Jersey's No Early Release Act: A Band-Aid Approach to Victims' Pain and Recidivism?, 22 Seton Hall Legis. J. 357, 366-69 (1997)[3]; see also Report of the Study Commission on Parole at 26 (December 23, 1996) (recognizing the public's concerns regarding the length of actual sentences served and finding them addressed by NERA).
As initially introduced in the New Jersey Senate on February 26, 1996, the Act contained a specific provision disallowing the use of commutation and work credits to reduce the eighty-five percent period of *692 parole ineligibility.[4]See S. No. 855 (introduced February 26, 1996). Although that provision was eventually eliminated in amendments proposed by the Assembly Appropriations Committee on March 3, 1997, there is nothing in the legislative history to suggest that the elimination was anything other than technical in nature, aimed at correction of the somewhat infelicitous phrasing of the initial bill.
This conclusion is reinforced by the Report of the Assembly Appropriations Committee, which summarized the bill as requiring, without qualification, that eligible defendants serve "at least 85 percent of the term of incarceration imposed by the court before being eligible for parole." Assembly Appropriation Committee Statement to S. No. 855 [Second Reprint] (March 3, 1997). The Committee's summary of proposed amendments by it makes no reference to a substantive change in the bill's content as the result of the elimination of a direct reference to the inapplicability of commutation and work credits. Ibid.
The fact that the Assembly Appropriation Committee did not intend its elimination of a specific reference to the inapplicability of commutation and work credits to effect a substantive change in the statute, and that it intended that inmates subject to NERA serve the full eight-five percent period of their parole ineligibility, is further reinforced by its handling of the issue of parole. Prior to NERA's enactment, its provisions were considered by a Study Commission on Parole, appointed by Governor Whitman to "undertake a thorough study of the parole system and ... make recommendations on how to improve the parole system." Executive Order 39 (July 25, 1995). In a report issued on December 23, 1996, the Commission recognized that under NERA,
most inmates sentenced under the 85 percent requirement would be automatically released (i.e., "max out") on or shortly after the completion of the minimum fixed term of parole ineligibility prescribed by statute. The Parole Board would have neither the opportunity nor the authority to deny parole based on a prediction of future criminal behavior, the inmate's unwillingness to participate in treatment, or deficiencies in the inmate's parole plan.
[Report of the Study Commission on Parole, supra, at 10.]
To ameliorate the difficulties that the Study Commission foresaw in a sentencing scheme that effectively made the end of a parole disqualification period also the end of an inmate's sentence, the Commission recommended
a period of post-release supervision and control that is sufficient in duration to ensure the inmate's successful transition into the community and to make certain that the person does not return to a life of crime and violence. (The 15 percent remainder of the original sentence may not be adequate for that purpose, especially when various prison credits are taken into account.) During the period of post-release supervision, the offender must be subject to monitoring and must be required to abide by general and special conditions of release.

*693 [Id. at 13-14.]
The Study Commission also recommended that defendants serving NERA sentences be subject to administrative revocation of parole and return to prison if the conditions of parole were violated. "It is not acceptable to provide that prosecution for a new crime will be the only remedy for a violation of a condition of post-release supervision." Id. at 14.
Subsequently, the Assembly Appropriations Committee amended the NERA bill by adding what is now subsection c of NERA, mandating a five-year period of parole supervision for defendants sentenced pursuant to NERA who had committed first-degree violent crimes, requiring a three-year period of parole supervision for defendants who had committed second-degree violent crimes, and providing a mechanism for the administrative revocation of parole that the Study Commission had recommended. See S. No. 855 [Fourth Reprint]; N.J.S.A. 2C:43-7.2c. Such provisions would not have been necessary if the Appropriations Committee had intended commutation and works credits to reduce the period of parole ineligibility, since then the problems foreseen by the Study Commission would not have arisen.
Further evidence of the Legislature's intent that the eighty-five percent parole disqualifier be served in its entirety arises from references to a concern that the provisions of NERA, which would necessitate a marked increase in prison beds, be in compliance with the Federal Violent Offender Incarceration and Truth-In-Sentencing Incentive Grants legislation, 42 U.S.C.A. §§ 13701 to 13712. See, e.g., Fiscal Note to S. No. 855 [First Reprint] (October 15, 1996); Assembly Appropriations Committee Statement to S. No. 855 [Second Reprint] (March 3, 1997); Report of the Study Commission on Parole, supra, at 11; Pilato, Note, supra, 33 Seton Hall Legis. J. at 363, 386. In order to be eligible for a truth-in-sentencing incentive grant under this federal legislation, the State must demonstrate that it has enacted statutes providing that persons convicted of certain violent crimes "serve not less than 85 percent of the sentence imposed (without counting time not actually served, such as administrative or statutory incentives for good behavior)." 42 U.S.C.A. § 13704(a)(1)(B).[5]
In summary, not a shred of evidence can be gleaned from the statutory history of NERA or its language to support the position adopted by defendant in this case. The statute provides that, for specified crimes, the sentencing court shall fix a minimum term of eighty-five percent of the sentence imposed "during which the defendant shall not be eligible for parole." We find no reason to deviate in our interpretation of this language from its plain import. See Higgins v. Pascack Valley Hosp., 158 N.J. 404, 418-19, 730 A.2d 327 (1999).
We also find no significance in the fact that N.J.S.A. 30:4-123.51a does not make specific reference to NERA when it states that "[c]onsistent with" other enumerated statutes, "commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term and such credits accrued shall only be awarded subsequent to the expiration of the term." The term "consistent with" cannot reasonably *694 be interpreted as requiring exclusion of any statutes that are not specifically identified. We therefore interpret the identified statutes as exemplars only.
If a conflict were to exist between NERA and the Parole Act, the clear direction of the Legislature in passing NERA would nonetheless prevail. As we noted in Merola, the Parole Act "explicitly recognizes that `no provisions of the New Jersey Code of Criminal Justice shall be superseded hereby.' N.J.S.A. 30:4-123.69." 285 N.J.Super. at 510, 667 A.2d 702. We have recognized that "[t]he supremacy of the Code over the statutes controlling parole and commutation credits has consistently been recognized by the Supreme Court." Id. at 511, 667 A.2d 702 (citing State v. Chapman, 95 N.J. 582, 592 n. 3, 472 A.2d 559 (1984)). Thus, the mandatory minimum sentence imposed pursuant to NERA cannot be altered by defendant's reading of N.J.S.A. 30:4-123.51.
Although, as defendant notes, the Criminal Code may generally express corrective and rehabilitative goals that are implemented through parole statutes awarding credits for good conduct and work performed in custody, the Code has also identified certain crimes of a magnitude sufficient to warrant the imposition of an immutable period of punishment prior to eligibility for parole. Such is the case for crimes sentenced pursuant to NERA. As the Study Commission on Parole viewed the NERA legislation:
[I]t represents more of a change to New Jersey's sentencing laws than to our parole laws. It is no coincidence in that regard that the philosophy underlying the legislation is widely known as the principle of "truth in sentencing" (emphasis added). Indeed, current sentencing law in New Jersey already authorizes, and in some instances requires, a court to set a minimum term of parole ineligibility. Currently, minimum terms are required by statute to be fixed by the court at between 33 percent to 50 percent of the total maximum sentence imposed. We thus view the proposed 85 percent ... requirement[] as [an] extension[] of this well-accepted general sentencing feature. Those minimum terms of parole ineligibility are designed, of course, to protect the public by incapacitating the most violent and predatory offenders  a goal that we strongly endorse.
[Report of the Study Commission on Parole, supra, at 11-12.]
The Commission thus found no inconsistency between NERA and the Code. We concur.
As a final matter, we reject defendant's argument that the deprivation of commutation and work credits violates his right to due process under the federal and state constitutions. We considered and rejected that argument in Merola, supra, 285 N.J.Super. at 512-15, 667 A.2d 702. We do not find that defendant's further arguments on this point are of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] Although this matter was framed as an appeal from defendant's sentence, the Attorney General has responded on behalf of the New Jersey Parole Board, since the issue raised concerns the Board's interpretation of governing statutes.
[2] That murder statute provides:

Murder is a crime of the first degree but a person convicted of murder shall be sentenced, except as provided in subsection c. of this section [provisions allowing for imposition of death], by the court to a term of 30 years, during which the person shall not be eligible for parole or to a specific term of years which shall be between 30 years and life imprisonment of which the person shall serve 30 years before being eligible for parole.
[3] This Note contains a significant portion of the history of the passage of NERA. Id. at 370-383.
[4] The proposed Act provided that:

Notwithstanding any commutation credits allowed for good behavior and credits earned for diligent application to work and other institutional assignments, or any other provision of law to the contrary, an inmate sentenced for a crime of the first or second degree involving violence to the custody of the Department of Corrections shall not be eligible for parole until the inmate has served not less than 85 percent of the court-ordered term of incarceration.
[S. No. 855.]
[5] Governor Whitman was quoted in the news as declaring: "(We) are taking the most violent criminals and saying to them they will serve the bulk of their sentences." For a ten-year term, "[n]ow it will be nine years before they are even considered for parole. That's the message behind this bill." Prison sentence bill signed, The Courier-News, June 10, 1997.