996 A.2d 457 (2010)
413 N.J. Super. 480
STATE of New Jersey, Plaintiff-Respondent,
v.
Roy F. FRIEDMAN, Defendant-Appellant.
No. A-0793-08T1
Superior Court of New Jersey, Appellate Division.
Submitted May 5, 2010.
Decided May 27, 2010.
*458 Yvonne Smith Segars, Public Defender, for appellant (Susan Green, Deputy Public Defender, of counsel and on the brief).
Warren W. Faulk, Camden County Prosecutor, for respondent (Teresa M. Garvey, Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, GRAVES and NEWMAN.
The opinion of the court was delivered by
STERN, P.J.A.D.
Defendant pled guilty to three counts of an indictment, each alleging second-degree aggravated assault against his wife. The record reflects that his total exposure on the indictment was 511 years, 394 without parole eligibility, and a fine of $6,275,000. The State recommended a maximum sentence of twenty years in the custody of the Commissioner of the Department of Corrections based on three consecutive sentences of seven, seven and six years each with eighty-five percent to be served before parole eligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant received that custodial sentence.
The factual basis for the plea revealed that the fifty-one year old defendant beat his wife, starting after twenty-five years of marriage. He also repeatedly burned her with the rack of a toaster oven, causing serious bodily injuries to different parts of her body. Defendant admitted that he burned his wife with the hot toaster oven racks on the legs and arms on the three occasions and that he had burned the same areas of her body repeatedly. At defendant's sentencing hearing, his wife stated that "I remember every day how he would hold the oven rack so hard on my arm and *459 my leg that my skin would sizzle, then melt, then rip off and stick to the metal racks. The sound and smell of my flesh burning, no words can possibly describe it."
At sentencing, defendant argued that the terms on each sentence should be the minimum if consecutive sentences were imposed and the NERA periods of parole supervision should run concurrently, even if the sentences were made to be served consecutively. The judge asked defendant if he understood the parole supervision could be nine years.[1]
Defendant appealed from the sentence imposed. By order issued after argument on the Sentence Oral Argument calendar, we affirmed the sentence, stating:
Having considered the record and argument of counsel, and it appearing that the issues on appeal relate solely to the sentence imposed, we are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion. State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005); State v. O'Donnell, 117 N.J. 210, 564 A.2d 1202 (1989); State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 471 A.2d 370 (1984).
... We also conclude that, while the negotiated plea agreement included the waiver of defendant's right to argue for concurrent sentences, the judge expressly stated at the time of sentencing that although defendant "stipulated that these would be consecutive sentences, each and every one of them, ... [and] waived any objection or appeal based on [State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985)], ... even applying those standards, it would appear that to a large degree, had you gone to trial, consecutive sentences would, in fact, have been imposed." The judge was satisfied that the three consecutive sentences were warranted by the "three separate and distinct chronologies" of aggravated assaults upon his wife, and repeated that "although you did waive Yarbough, the Court finds that consecutive sentences would be justified anyhow." Under these circumstances we decline to vacate the consecutive sentences imposed under the negotiated disposition (which also resulted in the dismissal of forty seven counts) or remand the matter for re-sentencing, whether or not the State would have the right to withdraw its offer. Compare, State v. Gibson, 68 N.J. 499, 348 A.2d 769 (1975) and R. 3:9-3(c), (d).
In the absence of an express challenge in these proceedings, we do not address the imposition of consecutive periods of parole supervision.
The judgment of conviction is affirmed.
Defendant moved for reconsideration to attack the imposition of consecutive periods of parole supervision. We granted the motion. This appeal presents a *460 narrow question that has not yet been addressed by a published New Jersey decision: whether a defendant who is sentenced to consecutive sentences subject to NERA must serve consecutive periods of parole supervision, or whether the multiple parole supervision periods should run concurrently commencing upon release.[2]
The second-degree crimes to which defendant pled guilty are subject to the provisions of NERA and therefore required that he serve 85% of his sentence before parole eligibility. N.J.S.A. 2C:43-7.2(a). NERA also provides that:
Notwithstanding any other provision of law to the contrary and in addition to any other sentence imposed, a court imposing a minimum period of parole ineligibility of 85 percent of the sentence pursuant to this section shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree, or a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree. The term of parole supervision shall commence upon the completion of the sentence of incarceration imposed by the court pursuant to subsection a. of this section [which requires the defendant to serve 85% of his sentence before being eligible for parole] unless the defendant is serving a sentence of incarceration for another crime at the time he completes the sentence of incarceration imposed pursuant to subsection a., in which case the term of parole supervision shall commence immediately upon the defendant's release from incarceration. During the term of parole supervision the defendant shall remain in release status in the community in the legal custody of the Commissioner of the Department of Corrections and shall be supervised by the State Parole Board as if on parole and shall be subject to the provisions and conditions of [N.J.S.A. 30:4-123.51b.].
[N.J.S.A. 2C:43-7.2(c), L. 1997, c. 117, § 2 (emphasis and bracketed material added).]
At sentencing defendant argued that the court should impose only one period of parole supervision. But the judge explained that he was imposing three consecutive periods of parole because:
I don't agree with the assessment of the defense that the statute is ambiguous. The statute is silent. But if you review the statute, you see the word "sentence." And when it's referring to the word "sentence," when you're looking at a NERA sentence, the sentence is state imprisonment and parole supervision for life. That's how I interpret it.
On top of that, [State v. Johnson, 182 N.J. 232, 864 A.2d 400 (2005)] is not on point with this case. [State v. Johnson] was a situation where a plea agreement was put through, three consecutive sentences were determined to be appropriate, however no one spoke about the parole supervision ... It went back for appellate review. It wasn't even in the plea agreement to any great extent.
In this particular instance, in order for the state to receive the benefit of the bargain, irrespective of your argument, I would still have to give him nine years because that's what the deal was.
* * *
[s]o, not only do I not agree with the assessment of [State v. Johnson]again, a very good argument, can't quibble with *461 you therebut when I read [State v. Johnson], the facts are opposite to this one. Two, the defendant knew full-well what his exposure was. And even if the form or any aspect was ambiguous, the Court cleaned out any potential ambiguity by the thoroughI have to pat myself on the backcolloquy that I had with the defendant at the time I took the plea.
So, as a result, three years' parole supervision on each one of these. It will be consecutive for a total of nine years' parole supervision upon release.
Defendant argues that the service of consecutive post-release parole supervision terms violates his right to substantive due process under U.S. Const. amend. XIV, and N.J.Const. art. 1, ¶ 1, and that it also violates the terms of NERA. The State responds that "the trial court properly imposed consecutive NERA parole supervision terms in connection with consecutive NERA sentences."
The Supreme Court, while reviewing the length of a prison sentence incidentally mentioned the provisions in those sentences which mandated that multiple NERA parole supervision terms would be served concurrently. State v. Johnson, supra, 182 N.J. at 235-36, 864 A.2d 400. The defendant in Johnson pled guilty to three counts of second-degree aggravated assault and was sentenced to an aggregate of fifteen years (five years for each conviction) with "`3 years of parole supervision upon release.'" Id. at 236, 864 A.2d 400. The Court reversed the conviction because Johnson had not been informed of the NERA parole supervision periods at the time of plea. Id. at 244, 864 A.2d 400. Such information was necessary as the parole supervision periods have a "penal impact." Id. at 240, 864 A.2d 400. If a defendant violates parole, he could serve a custodial sentence longer than his original sentence. Ibid. The Court illustrated that possibility by noting that Johnson was "required to serve 12.75 years of his 15-year term of imprisonment before he is eligible for parole. If [Johnson] is paroled at the earliest opportunity, the additional three years of parole supervision will result in a total aggregate sentence (15.75 years) that exceeds his original sentence." Id. at 240 n. 2, 864 A.2d 400 (emphasis added). This footnote indicates that the Johnson Court apparently presumed that the multiple parole supervision periods would be served concurrently or may have believed that the sentencing judge in that case had imposed concurrent parole supervision periods. In any event, the issue before us does not appear to have been raised in Johnson.
The primary goal when construing a statute is to "discern the meaning and intent of the Legislature." State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010). See also In re Tenure Hearing of Young, 202 N.J. 50, ____, 995 A.2d 826, 833-34 (2010). "[G]enerally, the best indicator of that intent is the statutory language," DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005), and the plain meaning of the statute's words are understood in accordance with the "generally accepted meaning" of the words. N.J.S.A. 1:1-1; see In re Tenure Hearing of Young, supra, 202 N.J. at ____, 995 A.2d at 833-34; State v. Gandhi, supra, 201 N.J. at 177, 989 A.2d 256; Carlson v. Hackensack, 410 N.J.Super. 491, 495, 983 A.2d 203 (App.Div.2009). "If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195, 927 A.2d 543 (2007).
However, a court must resort to extrinsic evidence of legislative intent if an examination of the plain language yields an *462 ambiguous result. In re Tenure Hearing of Young, supra, 202 N.J. at ____, 995 A.2d at 834; State v. Gandhi, supra, 201 N.J. at 177, 989 A.2d 256 (citing Richardson, supra, 192 N.J. at 195-96, 927 A.2d 543). An examination of extrinsic evidence may also be necessary if "a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." DiProspero, supra, 183 N.J. at 493, 874 A.2d 1039. A statute's legislative history is a "`central'" source of such extrinsic evidence of legislative intent. State v. Gandhi, supra, 201 N.J. at 177, 989 A.2d 256 (quoting Richardson, supra, 192 N.J. at 196, 927 A.2d 543).
Moreover, penal laws are to be strictly construed against the State if the meaning of the statute is still ambiguous after examining the plain meaning of the statute and the extrinsic evidence, lest a defendant suffer a penal consequence that was not intended by the Legislature. State v. Rolon, 199 N.J. 575, 585 n. 2, 974 A.2d 1021 (2009); State v. D.A., 191 N.J. 158, 164-165, 923 A.2d 217 (2007); see State v. Galloway, 133 N.J. 631, 658-59, 628 A.2d 735 (1993); State v. Valentin, 105 N.J. 14, 17-18, 519 A.2d 322 (1987); State v. Carbone, 38 N.J. 19, 23-24, 183 A.2d 1 (1962).
The plain meaning of N.J.S.A. 2C:43-7.2(c) can arguably be construed to mean that it is impermissible for NERA parole supervision periods to be served consecutively. The statute states that when a defendant is convicted of a crime requiring a NERA term, and he is incarcerated for another crime upon the completion of his service for the NERA eligible crime, "the term of parole supervision shall commence immediately upon his release from incarceration." N.J.S.A. 2C:43-7.2(c) (emphasis provided). The other crime could well be, as here, a consecutive sentence including a NERA term. If defendant's parole supervision periods were to be run consecutively from one another, the second and third periods of parole supervision would not "commence immediately" upon defendant's "release from incarceration," which would violate the command of the statute. Defendant argues that therefore "consecutive service of the parole term would violate the express statutory command."
However, the State argues that the plain meaning of "the term of parole supervision shall commence immediately upon his release from incarceration," N.J.S.A. 2C:43-7.2(c), is designed to clarify that defendants cannot serve any of their parole supervision time while they are still incarcerated. Moreover, the statute states flatly that upon the conviction of a NERA eligible crime "a court shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree, or a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree." N.J.S.A. 2C:43-7.2(c). It is therefore urged that if consecutive NERA parole supervision periods are not required, the statutory command that each conviction must result in a period of parole supervision will be nullified.
The relevant legislative history does not provide an unambiguous answer to whether consecutive NERA parole supervision periods are required. When attempting to discover the legislative intent of N.J.S.A. 2C:43-7.2(c) regarding consecutive parole supervision periods it is important to remember that
NERA's parole supervision provision is unique and radically different from non-NERA offenses. For non-NERA offenses, when an inmate is released on parole, the length of parole supervision extends to the point at which the sentence would expire. If because of accumulation *463 of credits the inmate "maxes out" before the conclusion of the specified sentence, the inmate is released before the expiration of the sentence without parole supervision. Of course, if the inmate serves the full sentence, release is without parole supervision. With a NERA sentence, however, regardless of when the inmate is released, he or she is subject to a fixed five-year term of parole supervision for first-degree crimes and three years for second-degree crimes.
Most NERA inmates will accumulate sufficient credits to "max out" and be released immediately upon completion of their 85% parole bar.
[State v. Freudenberger, 358 N.J.Super. 162, 168-69, 817 A.2d 371 (App.Div. 2003), overruled in part on other grounds, Johnson, supra, 182 N.J. at 242 n. 3, 864 A.2d 400.]
NERA was enacted by the Legislature in response to an "alarmingly high rate of parolee recidivism." State v. Thomas, 166 N.J. 560, 569, 767 A.2d 459 (2001), citing Stacey L. Pilato, Note, New Jersey's No Early Release Act: A Band-Aid Approach to Victims' Pain and Recidivism?, 22 Seton Hall Legis. J. 357, 364 (1997). "To reduce recidivism, NERA increases the real time period of incarceration of defendants who commit first- and second-degree 'violent' crimes by requiring that such defendants serve at least eighty-five percent of the sentences imposed." State v. Johnson, supra, 182 N.J. at 238, 864 A.2d 400 (citing N.J.S.A. 2C:43-7.2(a)). The drafters of NERA intended that the law would "increase prison time for offenders committing the most serious crimes in society." Senate Law and Public Safety Committee Statement to S. No. 855 with committee amendments, 206th Leg. (N.J. 1996).
When NERA was first introduced in the Legislature on February 26, 1996, and passed by the Senate on May 16, 1996, it did not include the parole supervision provision that became N.J.S.A. 2C:43-7.2c. S. No. 855 [Third Reprint with Assembly Amendments], 207th Leg. 1 (N.J. 1997). In December 1996, before NERA was enacted by the Legislature, Governor Whitman's Study Commission on Parole issued a report which endorsed the passage of NERA. Report of the Study Commission on Parole 9 (1996). However, the Commission raised the concern that if the then extant draft of NERA was enacted, which merely provided that serious criminal offenders would be required to serve 85% of their sentence, most serious offenders would be subject to very little, if any, parole supervision:
[M]ost inmates sentenced under the 85 percent requirement would be automatically released (i.e., "max out") on or shortly after the completion of the minimum fixed term of parole ineligibility prescribed by statute. The Parole Board would have neither the opportunity nor the authority to deny parole based on a prediction of future criminal behavior, the inmate's unwillingness to participate in treatment, or deficiencies in the inmate's parole plan.... His or her release would be dictated by operation of law rather than by a discretionary decision of the Parole Board. One of the witnesses before the Commission may have said it best when she observed that mandatory minimum sentencing usually means mandatory release from prison.
[Report of the Study Commission on Parole, supra, at 10-11.]
N.J.S.A. 30:4-123.51(a) provides that inmates without mandatory minimum or parole ineligibility terms can become eligible for release after serving one-third of the *464 sentence imposed, minus credits. See State v. Webster, 383 N.J.Super. 432, 434, 892 A.2d 688 (App.Div.2006), aff'd o.b., 190 N.J. 305, 920 A.2d 100 (2007). The Commission estimated that offenders "serve, on average, approximately 40 percent of their total sentences before being released to parole supervision ... [NERA] would thus have a dramatic impact, in some cases doubling the term of actual incarceration." Report of the Study Commission on Parole, supra, at 10. The Commission therefore proposed a required period of parole supervision to alleviate the concern that offenders who commit violent crimes would be released from prison without any period of parole supervision. The Commission proposed that
a period of post-release supervision and control that is sufficient in duration to ensure the inmate's successful transition into the community and to make certain that the person does not return to a life of crime and violence. (The 15 percent remainder of the original sentence may not be adequate for that purpose, especially when various prison credits are taken into account.) During the period of post-release supervision, the offender must be subject to monitoring and must be required to abide by general and special conditions of release.
Furthermore ... any such sentencing law must be structured so that if the person violates a condition of supervision following release from prison, he or she would be subject to administrative revocation of parole and return to prison.... The Legislature must not make it more difficult for the Parole Board and the Bureau of Parole to hold violent offenders accountable for violating the terms and conditions of parole supervision following their eventual and inevitable release.
[Id. at 13-14.]
Apparently in response to the suggestions of the Study Commission, the Assembly Appropriations Committee on March 3, 1997, amended the draft legislation by adding the parole supervision provision that became N.J.S.A. 2C:43-7.2(c). S., No. 855 [Second Reprint]; see also State v. Thomas, supra, 166 N.J. at 569-73, 767 A.2d 459;[3]State v. Webster, supra, 383 N.J.Super. at 439, 892 A.2d 688.
On June 9, 1997, NERA was signed into law by Governor Whitman. L. 1997, c. 117, § 2, eff. June 9, 1997. Governor Whitman's press release upon the signing of NERA explained that
to ensure that violent criminals who complete their sentence are not released into the community without supervision, [NERA] provides that such criminals receive post-release parole supervision from the Bureau of Parole. The supervision would last five years for first-degree offenders and three years for second-degree offenders. Under previous law, convicted criminals who served 85 percent of their sentence could have been released without a parole requirement.
[Office of the Governor Press Release, June 9, 1997.]
While NERA has been amended in subsequent years, none of these amendments altered the provision relevant to this case. N.J.S.A. 2C:43-7.2c, amended L. 2001, c. 79, § 16, eff. Sep. 1, 2001; L. 2001, c. 129, § 1, eff. June 29, 2001; L. 2002, c. 26, § 19, *465 eff. June 18, 2002; L. 2007, c. 341, § 6, eff. Jan. 13, 2008.
N.J.S.A. 2C:43-7.2(c)'s legislative history can be construed to support the position that NERA terms of parole supervision should be served consecutively because the supervision periods were designed to protect the public by allowing the Parole Board to place restrictions on offenders for periods of time that were more equivalent to the time that parolees used to serve on parole for equivalent pre-NERA specific term sentences. However, the Governor's statement does not say that and provides only that N.J.S.A. 2C:43-7.2(c) would prevent the re-entry of violent offenders without any period of supervision at all. See e.g., Fields v. Hoffman, 105 N.J. 262, 270, 520 A.2d 751 (1987) (concerning impact of Governor's statement).
The State also argues that when a defendant has been sentenced to consecutive NERA incarceration terms, as is the case here, the statute unambiguously requires that the following parole terms also be served consecutively in light of the established New Jersey Code of Criminal Justice principle that it is not permissible for sentences to run partially consecutive and partially concurrent. State v. Rogers, 124 N.J. 113, 120, 590 A.2d 234 (1991). However, we here deal with mandatory supervision, after service of a custodial sentence, required by the Legislature and not the sentencing judge. See State in the Interest of T.B., 134 N.J. 382, 387, 634 A.2d 473 (1993) (interpreting N.J.S.A. 2C:35-16 to require "that mandatory license revocations imposed on a single sentencing occasion be concurrent.").
Given the penal statute which we construe and the requirement that the period of parole supervision commence "immediately" after release from prison, we hold that the mandatory periods of parole supervision on consecutive NERA sentences must be served concurrently. Accordingly, we reverse the judgment to the extent it provides otherwise and remand for correction of the judgment.
NOTES
[1] The plea colloquy included the following:

Q. Theoretically, what would happen since you agreed thatyou have agreed it will be consecutive sentences, correct?
A. Yes.
Q. So your parole supervision would, likewise, be consecutive. So ultimately upon your release it would be nine-year period of parole supervision. Do you understand that?
A. Yes.
* * *
If you violated parole, theoretically you could be placed back in the correctional system for the balance of that nine-year period. If you came outfor example, you're out six months and violated parole, you'd have to do eight years, six months more to the state prison. That's what NERA parole supervision is.
Do you understand that?
A. Yes.
[2] This opinion does not address or cover sentences requiring parole supervision for life. See N.J.S.A. 2C:43-6.4
[3] Following the decision of the Supreme Court in State v. Thomas and in State v. Manzie, 335 N.J.Super. 267, 762 A.2d 276 (App. Div.2000), aff'd by evenly divided Court, 168 N.J. 113, 773 A.2d 659 (2001), the statute was amended to expressly list the crimes covered by NERA. See N.J.S.A. 2C:43-7.2(d), as amended by L. 2001, c. 129, effective June 29, 2001.