175 N.J. Super. 130 (1980)
417 A.2d 1075
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD LEE DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1980.
Decided June 3, 1980.
*133 John Cannel, Assistant Public Defender, argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney).
Carol M. Henderson, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; John J. DeCicco, First Asst. Atty. Gen., of counsel).
Before Judges MATTHEWS, ARD and POLOW.
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Ocean County Indictment 363-78 charged defendant Davis with murder (N.J.S.A. 2A:113-1 and 2A:113-2) (count I); rape (N.J.S.A. 2A:138-1) (count II); robbery (N.J.S.A. 2A:141-1) (count III) and with committing all of those acts while armed with an offensive weapon (N.J.S.A. 2A:151-5) (count IV).
*134 On August 15, 1979, following plea negotiations, defendant agreed to enter a retraxit plea of non vult to count I of the indictment charging him with murder. In return for defendant's plea the prosecutor agreed to dismiss the remaining three counts of the indictment. In addition, defendant requested that he be sentenced pursuant to the provisions of the new Criminal Code, as provided in N.J.S.A. 2C:1-1 c(2) effective September 1, 1979. N.J.S.A. 2C:1-1 c(2) provides that the sentencing judge, with the consent of defendant, may in any case pending on or initiated after the effective date of the Code involving an offense committed prior to the effective date, impose sentence under the provisions of the Code. The agreement provided that pursuant to N.J.S.A. 2C:11-3 b defendant could receive, as sentence for the murder, a crime of the first degree, either (1) a term of 30 years, of which the person must serve 15 years before being eligible for parole, or (2) as in a crime of the first degree except that the maximum term for such crime of the first degree shall be 30 years. N.J.S.A. 2C:11-3 b. That statute also provides that a person may be sentenced according to its provisions notwithstanding the provisions of N.J.S.A. 2C:44-1 f (presumptive sentences) which provide a custodial term of 15 years for a crime of the first degree except for murder or kidnapping.
After determining that the plea was knowing and voluntary, and that there was a factual basis for it, Judge Addison accepted defendant's plea of non vult. The judge stated that defendant had been represented by competent counsel, had had the indictment explained to him and understood both the nature of the charge and the maximum penalties permitted by law and had entered his plea voluntarily.
On September 21, 1979 defendant was sentenced to the New Jersey State Prison for a term of 30 years, of which 15 years must be served before becoming eligible for parole. Pursuant to R. 3:21-4(e), which requires the court to state its reasons for imposing such sentence, the final judgment of conviction stated that the nature of the "crime, its manner of commission, the facts surrounding it, the nature of the wounds, its heinous nature, all demand that a lengthy term of imprisonment be *135 imposed." Judge Addison advised defendant he had the right to appeal the sentence. Counsel for defendant objected to defendant's sentence on the basis that the sentence imposed had not been agreed upon. The following colloquy took place between defense counsel and the judge:
MR. KIRBY: Just to clear the record, Your Honor. You indicate that we  that the sentence that we agreed upon  we did not agree upon that sentence. We agreed 
THE COURT: You agreed on the maximum.
MR. KIRBY: A maximum, but 
THE COURT: And that's what I've given him.
MR. KIRBY: Yes, sir, but we did not agree that that would be the Court's  that I would consent to that.
THE COURT: That is correct.
MR. KIRBY: All right.
THE COURT: That is correct. The plea bargain provided that the Court would not impose a sentence in excess of thirty years.
MR. KIRBY: That's correct.
THE COURT: But the other terms of the sentence were not bargained.

MR. KIRBY: That's correct.
Defendant and his victim were both employed at the Howard Johnson's Motel in Toms River. The victim worked at the front desk while defendant was employed as a cook and dishwasher. The circumstances of the event are somewhat unclear. The facts appear to indicate that on February 27, 1979, at about 5:15 a.m., defendant robbed the victim, then forced her to accompany him to an unoccupied room of the motel where he raped her. The State also suggests that after being raped, the victim attempted to escape from defendant and that he prevented her from leaving the room and stabbed her with a knife at least ten times in the chest, abdomen, leg and back. These wounds resulted in her death. The autopsy report reveals that abrasions around the victim's neck indicated that she was also strangled. At the plea hearing, defendant indicated he did not recall how many times he had stabbed the victim but he did admit that his actions resulted in his victim's death. Defendant was unable to explain why he had committed murder but the circumstances seem to indicate a total loss of control at the time.
Later that day defendant was apprehended at the motel after the police, who had been notified of the victim's disappearance, *136 had conducted a preliminary investigation which included questioning defendant. Several hours later defendant confessed to the crime.
Although he admits murdering her, defendant denies having either robbed or raped his victim. He claims that she voluntarily accompanied him to the unoccupied motel room where they engaged in sexual intercourse. He further alleged that, after having sex, she attempted to leave the room without her clothes. Defendant said he prevented for from leaving because he feared he would lose his job. He claimed that his victim then pulled a knife on him (apparently from her unclothed body) which he was able to take from her. Then, for some inexplicable reason, defendant stabbed his victim, causing her death.
Defendant's account of the incident was undermined by the fact that money which was found to be missing from the front cash register was later found on his person, strongly suggesting that robbery was involved. In addition, the number of bruises found on the victim's face and body strongly indicated that the sexual activity between the victim and defendant was not voluntary.
Defendant maintains that he cooperated fully with the authorities although he did not voluntarily surrender, and admitted he committed the crime only after police investigation. At sentencing defendant explained that he entered a plea of non vult because he did not wish to subject the victim's family or himself to a trial. Defendant also stated he felt a tremendous remorse and guilt over the tragic incident.
Judge Addison concluded, after reading the presentence report and the autopsy report, that, regardless of whether the initial contact between the parties was "permissive," the heinous nature of the crime, especially the nature of the wounds inflicted which included fractured ribs, chipped ribs, puncture wounds and lacerations in the periocardial cavity, throat and neck, mandated the sentence imposed. He also noted that he could have imposed a longer sentence under the Code then he did but refrained from doing anything other than that which was included in the plea bargain.
*137 Defendant maintains that the sentence is both excessive and unconstitutional and results, in part, from the judge's failure to note a number of mitigating factors regarding his history which are relevant to sentencing. Those factors include the fact that he served in the United States Air Force for five years and served a tour of duty in Vietnam, received an honorable discharge in 1976, had been gainfully employed in the Toms River area and has no previous criminal involvement as either a juvenile or adult other than a single charge of carnal abuse as an adult to which he pleaded guilty and served six months in jail.

I
Defendant first argues that his sentence is manifestly excessive and that Judge Addison's reasons for the sentence were insufficient because he failed specifically to state his findings with regard to the presence or absence of mitigating or aggravating factors enumerated in N.J.S.A. 2C:44-1, as required by R. 3:21-4(e) and N.J.S.A. 2C:43-2 d. The State maintains that while Judge Addison did not specifically refer to the criteria in N.J.S.A. 2C:44-1, he nevertheless considered the applicable factors in imposing sentence and stated on the record the aggravating factors he found particularly compelling. We agree.
Judge Addison stated at defendant's sentencing hearing that he considered the nature and circumstances of the murder, the character of the defendant, the arguments advanced by counsel and the information supplied in defendant's presentence report. After considering all of these factors he sentenced defendant pursuant to the provisions of N.J.S.A. 2C:11-3 b(1) to 30 years in State Prison, 15 years of which must be served before he would be eligible for parole. In doing so he stated his reasons as follows:
I've read the presentence report and I have examined the record indicating the nature of the wounds that were inflicted upon the deceased including fractured ribs, chipped ribs, puncture wounds, lacerations in the periocardial cavity, throat, neck. I don't know whether the defendant has, in fact, shown or felt remorse. You can't get that from a plain piece of paper, but there isn't any question that *138 Mr. Davis did, in fact, whether the initial contact between the parties was permissive or not, assault the deceased, and I would say in the course of causing her death, went wild. Once he started he couldn't stop. There's no question this is a heinous crime.
The final judgment of conviction and order for commitment further provided as the statement of reasons required by R. 3:21-4(e):
This crime, its manner of commission, the facts surrounding it, the nature of the wounds, its heinous nature, all demand that a lengthy term of imprisonment be imposed.
Defendant argues that these reasons were insufficient even prior to the enactment of the new Code. He analogizes the instant situation to the facts in State v. Sanducci, 150 N.J. Super. 400 (App.Div. 1977), certif. den. 75 N.J. 524 (1977), in which we found the trial judge's statement of reasons insufficient for the sentence imposed. The judge in Sanducci had imposed a severe custodial term and gave as his reasons only "Extremely serious offense. Punishment necessary." 150 N.J. Super. at 403. We found that we were unable to appraise the sentence on the record before us. We noted particularly that we had not been furnished with a transcript of the sentencing proceedings and thus did not have the benefit of any amplification the trial judge may have made of his reasons for imposition of such a severe penalty. This is clearly distinguishable from the case at bar where this court has been furnished with the transcript of defendant's sentencing and the trial judge stated clearly several of the factors he considered in imposing sentence.
Defendant maintains that Judge Addison failed to consider the mitigating factors under 2C:44-1 b that were present when he imposed sentence. He relies on the recent decision in State v. Whitaker, 79 N.J. 503 (1979), in which the court stated that the gravity of the offense, the appropriate punishment, deterrence, protection of the public, rehabilitation and any other factors or circumstances relevant, including the offender himself, i.e., his age, background, social adjustment, attitude, personality traits, physical, emotional and mental condition and his record, should all be considered in imposing sentence. 79 N.J. at 509. Defendant argues that the sentencing judge improperly ignored attributes *139 Whitaker found to be critical. Drawing on Whitaker and State v. Leggeadrini, 75 N.J. 150, 160 (1977), defendant argues that the judge should have considered whether the crime was "a product of a disastrously poor exercise of judgment" and an "emotionally rooted overreaction to what he [defendant] perceived as engulfing circumstances"; and whether defendant is likely to recidivate. Defendant charges that the judge failed to follow the Supreme Court's directives because there is no indication that he considered his military experience in Vietnam which, according to defendant's mother, was an integral part of the "engulfing circumstances" culminating in the murder, or that he considered his gainful employment at the time of the offense or his open acknowledgment of the crime and his deep sense of remorse. Defendant also argues that Judge Addison failed to consider the absence of a prior juvenile record, the fact that the circumstances surrounding the crime were unlikely to recur, that his character was such that it was unlikely he would commit another offense and that he is likely to respond to probationary treatment.
Defendant, however, had an adult record. He pleaded guilty to carnal abuse in 1978. His contention that the murder he admits committing is similar to the crime with which the defendant in State v. Leggeadrini, above, was charged, in that it was a result induced by "engulfing circumstances," is not borne out by the record. Defendant has been unable to explain his actions adequately and his version of the events surrounding the murder were considered highly suspect by the probation officer. These circumstances are clearly distinguishable from those in Leggeadrini, in which the elderly defendant had killed a neighbor he had often quarreled with during a particularly heated dispute. There, the court noted as mitigating factors the defendant's advanced age, lack of criminal record (especially noteworthy at such an advanced age), his involvement in the community, his voluntary plea of guilty and the fact that he summoned the police and cooperated fully with them knowing he faced possible life imprisonment.
*140 The record here indicates that Judge Addison considered the information in the presentence report as well as the factors defendant argues mitigate the serious nature of his crime. The probation officer and Judge Addison expressed doubts about the sincerity of defendant's remorse. Judge Addison clearly considered the aggravating factors in 2C:44-1 a(1) and (2), i.e., the harm inflicted upon the victim and the nature of the offense and whether it was committed in an especially heinous, cruel or depraved manner, even though he did not specifically refer to this statute. As a result, the judge chose to follow the recommendation made by the State in imposing a 30-year maximum term which precluded parole eligibility for 15 years.
In view of the facts developed at the plea hearing and the sentencing proceedings, we find the statements made by Judge Addison at sentencing appear to meet the requirements of R. 3:21-4(e) and N.J.S.A. 2C:43-2 d.
We find that defendant's alternate argument that his sentence is manifestly excessive also lacks merit. The sentence of a trial court is presumed to be reasonable, and an appellate court should not modify a sentence unless it is unduly punitive or there is a clear showing of an abuse of discretion. State v. Sanducci, above, 150 N.J. Super. at 402; State v. Knight, 72 N.J. 193, 194-195 (1976). The same presumption of reasonableness adheres to a sentence imposed under a plea arrangement. In reviewing such a sentence an appellate court should recognize that the defendant has freely agreed to the imposition of the sentence. State v. Spinks, 66 N.J. 568, 573 (1975). The essence of a negotiated plea is defendant's voluntary and informed waiver of his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like. Due regard for defendant's constitutional rights requires that all terms of a negotiated plea be fully met. However, neither the State nor defendant can insist that a particular sentence be imposed even though it may have been negotiated. The final sentence is always a matter for the discretion of the trial judge. State v. Spinks, supra at 574.
*141 Here, defendant agreed to be sentenced under the new Criminal Code. As provided in the Code, notwithstanding the provisions of 2C:44-1 f (presumptive sentences), a person convicted of murder may be sentenced to a term of 30 years of which 15 years must be served before the person is eligible for parole. A person convicted of murder may alternatively be sentenced as in a crime of the first degree except that the maximum term that may be imposed shall be 30 years. The ordinary term for murder in the latter instance ranges between 10 and 30 years. See N.J.S.A. 2C:43-6 a(1); 2C:11-3 b. As part of the ordinary term of imprisonment imposed for murder, the sentencing judge may, notwithstanding the provisions of N.J.S.A. 2C:43-9 regarding parole, fix a minimum period of parole ineligibility which may be up to one-half of the ordinary term of imprisonment imposed. N.J.S.A. 2C:43-6 b. Murder may also be punished by an extended term of imprisonment for a specific term of years, to be fixed by the judge, between 30 years and life imprisonment. N.J.S.A. 2C:11-3 b, N.J.S.A. 2C:43-7 a(1). The record here does not indicate that the plea negotiations involved anything other than the maximum term (30 years) to which defendant would be sentenced. Defendant clearly knew what he was doing in entering a plea of non vult to murder and obviously understood, since the maximum had been negotiated, that he would be sentenced under the provisions of one of the subsections of 2C:11-3 b. He obviously hoped to be sentenced pursuant to N.J.S.A. 2C:11-3 b(2) in which the ordinary term for murder could range between 10 and 30 years, making him eligible for parole between 5 to 15 years. The fact Judge Addison disappointed defendant by choosing to sentence him under 2C:11-3 b(1) does not demonstrate an abuse of discretion. State v. Marzolf, 79 N.J. 167, 184 (1979). Consideration was given to both the offender and the nature of the offense. State v. Whitaker, above, 79 N.J. at 512.
Defendant may have expected, perhaps unreasonably, to receive a less severe custodial term but the fact that Judge Addison considered the crime sufficiently serious to warrant a substantial term of imprisonment does not indicate an abuse of *142 discretion requiring invalidation of the sentence imposed. Moreover, Judge Addison stayed within the bounds of the plea agreement. Similarly, while Judge Addison perhaps should have been more explicit in referring to the aggravating and mitigating factors as required by the Code, the record leaves little doubt that he considered such factors and referred to them during sentencing. The fact that he did not consider certain factors to be especially mitigating does not constitute an abuse of discretion. The ultimate balancing of aggravating and mitigating factors remains the province of the sentencing judge and Judge Addison acted reasonably in finding that the aggravating factors outweighed the mitigating factors in this case.

II
Defendant argues that the mandatory minimum term of 15 years should be reduced by good time and work credits that he may earn in prison, possibly making him eligible for parole in seven years. The State contends that this argument is contrary to the plain meaning of the statute, the legislative history of this provision, prevailing case law, and the law governing parole.
Initially, the State notes that defendant has chosen an inappropriate manner and forum in which to raise this point. The State argues that the issue of whether or not these credits should be deducted from defendant's sentence is one that should be addressed to parole authorities. The State is correct in pointing out that it was Judge Addison's function to impose sentence and not to determine whether or not credits are deducted from a mandatory minimum term.
N.J.S.A. 2C:11-3 b(1) provides that a person convicted of murder may be sentenced by the court to a term of 30 years of which 15 years must be served before becoming eligible for parole. The language of this provision clearly establishes a mandatory minimum period of incarceration before defendant is eligible for parole. N.J.S.A. 2C:43-6 b establishes the ordinary terms of imprisonment for Code offenses and states:

*143 As part of a sentence for a crime of the first or second degree and notwithstanding the provision of 2C:43-9,[*] the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a. during which defendant shall not be eligible for parole. ... [Emphasis supplied]
Furthermore, the extended term provisions in 2C:43-7 b also contain a specific reference to the imposition of a mandatory minimum term. The statute provides in part that
As part of a sentence for an extended term and notwithstanding the provisions of 2C:43-9, the court may fix a minimum term not to exceed one-half of the term set pursuant to subsection a. during which the defendant shall not be eligible for parole ... [Emphasis supplied]
These provisions clearly state that a defendant must serve a minimum period of incarceration before even becoming eligible for parole.
Defendant argues that existing law at the time of sentencing on September 21, 1979 provided for reduction by work and time credits of a minimum term imposed pursuant to 2C:11-3 b. He argues that prior to the enactment of the new Code it was clear that minimum and maximum sentences were affected by time credits awarded pursuant to Title 30. N.J.S.A. 30:4-140 specifically provided a deduction from both the maximum and minimum term for time credits. Defendant states that "against this background" the new Code continued to use the words "minimum sentences" or "minimum terms," and cites 2C:11-3 b, 14-6 and 43-6 as support for his argument. He further states that these Code provisions make no mention of good and work time, either to "note that it would be deducted nor to forbid such deduction." However, 2C:11-3 b does not contain the word "minimum" and the term is used in 2C:14-6 and 2C:43-6 with reference to the authority of the court to set a minimum term during which the defendant shall not be eligible for parole. Defendant finally argues that in the absence of specific directives concerning good and work time credits, it must be *144 assumed that the Legislature could have intended that the words in Title 30 would control and provide good and work time for these "new minimum terms." As support he cites 2C:1-1 e which states that
The provisions of the code not inconsistent with those of prior laws shall be construed as a continuation of such laws. [Emphasis supplied]
It is obvious that the parole eligibility requirements of 2C:11-3 b(1) are inconsistent with defendant's interpretation of prior law regarding time credits and should not, therefore, be viewed as a continuation of such laws. It is a basic general principle that a criminal statute is to be strictly construed. State v. Rucker, 46 N.J. Super. 162, 167 (App.Div. 1957), certif. den. 25 N.J. 102 (1957). The words in a statute are to be given their ordinary and well understood meaning in the absence of any explicit indication of a special meaning. Lopez v. Santiago, 125 N.J. Super. 268, 270 (App.Div. 1973). Where the language of a statute is plain, there is no need for interpretation. The plain and obvious meaning of the provision in question is that a defendant sentenced pursuant to 2C:11-3 b(1) must serve 15 years before he is eligible for parole. The problem with defendant's analysis is that prior to the enactment of the new Code there was no comparable mandatory minimum period of incarceration, and therefore prior parole law is inconsistent and inapplicable.
As pointed out in the State's brief, the Senate Judiciary Committee specifically noted that the minimum-maximum sentence structure currently in use in New Jersey would be abandoned by the new Code and the sentencing judge would only be permitted to set the maximum sentence from a range of sentences. The Code does permit the judge in first and second degree convictions, however, to set a minimum term of one-half of the sentence which must be served before the offender is eligible for parole.
Defendant states that it was not until after sentencing in this case in December 1979 that contrary language was first introduced to amend the Parole Act of 1979 to make time credits inapplicable to minimum terms. He thus argues that "it cannot *145 be doubted that at the time of sentencing all reasonable considerations would have suggested that good and work time credits applied to the judicially imposed minimum term that the defendant received."
In a letter dated March 21, 1980, to which defendant attaches a copy of the Attorney General's opinion of March 3, 1980 regarding the inapplicability of time credits under the new Code, defendant further argues that since the Attorney General relied solely on the Parole Act of 1979 rather than pointing to any Code provisions to support his position, time credits must have been applicable at the time defendant was sentenced. The Parole Act of 1979 did not become effective until April 22, 1980 and any attempt to make it retrospective in its denial of time credits would run "afoul of the constitutional prohibition against ex post facto laws." However, as the Attorney General's opinion points out, the Parole Act was amended in February 1980 to comport with the provisions of the new Criminal Code to make commutation and work credits inapplicable to reduce any judicial or statutory mandatory minimum term. In addition, § 2 a of the Parole Act provides in pertinent part that
This act shall apply to all persons now serving or hereafter sentenced or committed to State correctional facilities.... [Emphasis supplied]
Defendant was obviously serving his sentence at this time and would thus be included within the provisions of the new Parole Act of 1979.
We find no constitutional problem presented by the denial of credits. Parole is not a constitutional right but an act of leniency or grace and a device for the protection of society through the rehabilitation of the offender. Zink v. Lear, 28 N.J. Super. 515, 522 (App.Div. 1953); DiMiceli v. State Parole Board, 29 N.J. Super. 80, 84 (App.Div. 1953), aff'd 15 N.J. 446 (1954). In support of the State's position that this issue is not properly before the courts, we noted in Lipschitz v. State, 43 N.J. Super. 522, 525 (App.Div. 1957), that the granting of work credits is purely a legislative function and could not properly be included in the sentencing procedure. In Trantino v. Department of Corrections, 168 N.J. Super. 220 (App.Div. 1979), certif. *146 den. 81 N.J. 338 (1979), we were faced with a situation where the offender's best estimated parole expectation date was changed from September 1977 to December 1979 as a result of a new policy which refused to grant work credits toward parole for time spent on death row which was not actually spent in a productive occupation. We decided that the change in dates did not offend constitutional prohibitions against the imposition of ex post facto laws. Trantino had no vested right in the September 1977 date, and the fact it was subsequently changed did not impress the court as an issue of constitutional dimensions. As we stated in Zink v. Lear:
When sentence is imposed upon a defendant, there is no constitutional guaranty that the provisions regarding parole will remain constant; the only constitutional inhibition is that no law may be passed increasing the punishment for the crime committed ... The act [Parole Act of 1948] simply changed the procedure of administering parole and bears none of the elements requiring condemnation as abrogating the prisoner's constitutional rights. [28 N.J. Super. at 525; emphasis supplied]
Thus, it is clear that the mandatory minimum term of parole ineligibility does not deprive defendant of any constitutional right. See also, White v. Parole Board of N.J., 17 N.J. Super. 580, 586 (App.Div. 1952); In re Zienowicz, 12 N.J. Super. 563, 573 (Cty.Ct. 1951).
Defendant also argues that Judge Addison did not comply with N.J.S.A. 2C:44-1 c(2) which requires a court to consider a defendant's eligibility for release under the law governing parole, including time credits awarded pursuant to Title 30, in determining the appropriate term of imprisonment. The fact Judge Addison chose 2C:11-3 b(1) rather than 2C:11-3 b(2) clearly indicates he considered defendant's parole eligibility. Obviously, Judge Addison did not believe the option of a 30-year maximum would be appropriate and chose, instead, a 30-year term with a minimum of 15 years to be served before parole eligibility.

III
Defendant's final argument rests in his contention that his sentence under the new Criminal Code increased the punishment *147 for his offense by postponing his parole eligibility beyond what it would have been under Title 2A, and N.J.S.A. 2C:11-3 b(1) is therefore an unconstitutional ex post facto law.
The prohibition against ex post facto laws is designed to secure substantial personal rights against arbitrary and oppressive legislation and is not intended to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). An ex post facto law has been characterized as
... any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

[Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 70 L.Ed. 216 (1925)]
The sentencing provisions of 2C:11-3 b were not automatically applied in this case. Defendant voluntarily consented to be sentenced under the new Code pursuant to a procedural provision, 2C:1-1 c(2), which gave him a right to be sentenced under either the new or old Criminal Code. Since this was a procedural provision, even though it ultimately, in defendant's view, worked to his disadvantage, we do not find it void and unconstitutional as an ex post facto law. Dobbert, above 432 U.S. at 293, 97 S.Ct. at 2298; Beazell, above 269 U.S. at 170, 46 S.Ct. at 69.
Defendant claims that at the time of his offense the sentence for his crime under the old statute was a mandatory term of life imprisonment. He alleges that if he had been sentenced under Title 2A, he would have been eligible for parole after having served only 11 years, 7 months and 3 days.[**] Under his 2C:11-3 b(1) sentence, however, he claims his parole eligibility is postponed *148 for 15 years, thereby allegedly increasing his punishment in violation of the ex post facto clause of the Constitution.
Defendant knowingly and voluntarily waived his right to be sentenced under Title 2A and entered into a plea agreement. He was clearly aware of the sentencing options available under both Title 2C and Title 2A, and after consultation with counsel decided to elect sentencing under the new code. Judge Addison explained the meaning of defendant's plea to him and determined that it was a knowing and voluntary plea. It is obvious that defendant here bargained for a maximum of 30 years and was well aware of the alternative provisions of 2C:11-3 b which Judge Addison could choose. When a plea is being negotiated, knowledge of one's ineligibility for parole is as necessary to an understanding of a plea as is knowledge of the maximum sentence possible. Defendant here was aware of both of these factors. Having chosen a course of action, he cannot now be permitted to attack that very procedure because he is displeased with the results. State v. Pontery, 19 N.J. 457, 471 (1955); State v. Harper, 128 N.J. Super. 270, 277 (App.Div. 1974), certif. den. 65 N.J. 574 (1974), 68 N.J. 284 (1975).
Defendant relies heavily on Greenfield v. Scafati, 277 F. Supp. 644, 646 (D.Mass. 1967), aff'd mem. 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968), in which the court declared that a change in good time deductions for violation of parole made applicable to persons already under sentence had the potential to substantially increase the length of time an individual served in prison and could not be constitutionally supported. The case is clearly distinguishable because the amendment, by depriving defendant of monthly allowances achievable in the first six months of reconfinement, was found to increase his sentence. The court there stated that the Constitution forbids imposition of a sentence by virtue of a change in the law greater than the maximum sentence permitted at the date of the offense. 277 F. Supp., at 645.
Affirmed.
NOTES
[*] N.J.S.A. 2C:43-9 provides that an offender sentenced to imprisonment under 2C:11-3 shall be released conditionally on parole at or before the expiration of such term; since murder is a crime of the first degree, the statute cited above clearly establishes that persons sentenced under 2C:11-3 b(1) are not subject to the provisions of 2C:43-9.
[**] That time represents an optimum which is possible but certainly not probable.