**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2308-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEON A. DOYLE-BAKER,

    Defendant-Appellant.

_____

Submitted January 4, 2021 – Decided January 22, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-06-1122.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from his convictions for second-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-5(b)(2); and second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1. The police conducted a proper field inquiry, obtained a search warrant, and seized the CDS and loaded gun from defendant's car. The record supports the order denying defendant's motion to suppress, and the sentence is not excessive. We therefore affirm.

On appeal, defendant argues:

POINT I

THE TRIAL [JUDGE] ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE INITIAL INTERACTION BETWEEN THE DETECTIVES AND DEFENDANT WAS NOT A FIELD INQUIRY, BUT RATHER, AN INVESTIGATORY STOP THAT WAS NOT SUPPORTED BY REASONABLE SUSPICION. THEREFORE, THE SEIZURE OF CONTRABAND FROM DEFENDANT'S CAR PURSUANT TO A LATER-OBTAINED SEARCH WARRANT WAS FRUIT OF THE UNCONSTITUTIONAL STOP THAT MUST BE SUPPRESSED.

2

POINT II

DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND MUST BE REDUCED.


I.

In our review of the grant or denial of a motion to suppress, we "must defer" to the motion judge's factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). We ordinarily defer to those findings because they "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We will disregard those findings only when a trial judge's findings of fact are "so clearly mistaken that the interests of justice demand intervention and correction." State v. Hagans, 233 N.J. 30, 37-38 (2018) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). We review a motion judge's legal conclusions de novo. Dunbar, 229 N.J. at 538. Here, the facts regarding the detective's inquiries for identification were essentially undisputed.

A-2308-18T3

Both the federal and State constitutions protect citizens against unreasonable searches and seizures.  See U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see also State v. Terry, 232 N.J. 218, 231 (2018).  "The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts."  Terry, 232 N.J. at 231 (quoting South Dakota v. Opperman, 428 U.S. 364, 372-73 (1976)).  Defendant maintains that the initial inquiries of the detectives amounted to an investigative stop unsupported by reasonable suspicion.

There are three types of interactions with law enforcement, each involving different constitutional implications depending on the event's impact on an individual's freedom to leave the scene.  First, a "field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer."  State v. Rosario, 229 N.J. 263, 271 (2017).  The individual is free to leave; therefore, field inquiries do not require a well-grounded suspicion of criminal activity before commencement.  Id. at 271-72; see also Elders, 192 N.J. at 246. Second, an investigatory stop or detention, sometimes referred to as a Terry[1] stop, involves a temporary seizure that restricts a person's movement. A Terry stop

---

[1]  Terry v. Ohio, 392 U.S. 1 (1968).

A-2308-18T3

implicates a constitutional requirement that there be "'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." Elders, 192 N.J. at 247 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)). Third, an arrest requires "probable cause and generally [are] supported by an arrest warrant or by demonstration of grounds that would have justified one." Rosario, 229 N.J. at 272.

When "determining whether a seizure occurred, a judge must consider whether 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave.'" State v. Stovall, 170 N.J. 346, 355 (2002) (alteration in original) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). To establish that a stop was valid, the State has the burden of proving that the police were aware of "specific and articulable facts which, taken together with rational inferences from those facts, [gave] rise to a reasonable suspicion of criminal activity." State v. Mann, 203 N.J. 328, 338 (2010) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)); see Terry, 392 U.S. at 20. If there was no reasonable suspicion, evidence discovered during a search conducted during the detention is subject to exclusion. State v. Chisum, 236 N.J. 530, 546 (2019).

To determine whether reasonable suspicion exists, a judge must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019) (quoting Stovall, 170 N.J. at 361). This analysis also considers police officers' "background and training," id. at 555, including their ability to "make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Ibid. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). "'Furtive' movements by [a] defendant," unaccompanied by other circumstances, "cannot provide reasonable and articulable suspicion to support a detention in the first instance." Rosario, 229 N.J. at 277; see State v. Dunbar, 434 N.J. Super. 522, 527 (App. Div. 2014).

Investigative stops are justified, even absent probable cause, "if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986). Judges are to determine whether the totality of the circumstances gives rise to an "articulable or particularized suspicion" of criminal activity, not by use of a strict formula, but "through a sensitive appraisal of the circumstances in each case." Ibid. Our

6

Supreme Court recognized the two-step analysis set forth in <u>United States v. Cortez</u>, 449 U.S. 411 (1981),

> for determining whether the totality of circumstances creates a "particularized suspicion." A [judge] must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. [A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a [judge] must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [<u>Davis</u>, 104 N.J. at 501 (alterations in original) (citations omitted) (quoting <u>Cortez</u>, 449 U.S. at 418).]

Here, the judge found two detectives observed defendant inspecting a disabled vehicle with its hood up in a parking lot of a big box store. As the judge indicated, the detectives did not know defendant's connection to the vehicle or whether he needed help. The detectives were initially engaged in a community caretaking function, and as part of a field inquiry, asked defendant to identify himself and produce identification. In so doing, they learned that defendant had an open warrant. Around this time, defendant shouted to an unidentified male walking nearby to contact a tow truck and made a gesture with his hand, which the officer interpreted to mean a firearm was in the vehicle. The

7

detectives then obtained a search warrant, seized the gun and cocaine, arrested defendant, and charged him with committing these second-degree crimes.

A mere request for identification does not escalate a field inquiry into an investigatory stop, so long as the officer's questions are not overbearing and do not give the impression that the person is not free to refuse the request or was the target of an investigation. Here, there are no credible facts that show that the request for identification escalated the inquiry to an investigative stop. Indeed, there is no evidence of any demands or orders by the detectives that defendant was not free to refuse. The record does not reflect the inquiries were accusatory in any way, or that the detectives acted in an overbearing or harassing manner.

II.

We reject defendant's argument that he received an excessive sentence. After finding aggravating factors three, six, and nine outweighed the mitigating factors, the judge sentenced defendant in accordance with the negotiated plea agreement to an aggregate term of twelve years in prison with six years of parole ineligibility. Defendant was extended-term eligible due to his criminal record, which included four juvenile adjudications, municipal court convictions, and an indictable adult conviction.

A-2308-18T3

Our review of a trial judge's sentencing determination is deferential. State v. Lawless, 214 N.J. 594, 606 (2013). We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the [sentencing judge] properly identifie[d] and balance[d] aggravating and mitigating factors that [were] supported by competent credible evidence in the record." Ibid. (quoting State v. Natale, 184 N.J. 458, 489 (2005)).

We may only vacate a sentence where: (1) "the sentencing guidelines[] were violated"; (2) the aggravating or mitigating factors considered were not "based upon competent credible evidence in the record"; or (3) "even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of th[e] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984). "A sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily '[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like.'" State v. Fuentes, 217 N.J. 57, 70-71 (2014) (alterations in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)). However, "[e]ven a sentence recommended as part of a plea

agreement . . . may be vacated if it does not comport with the sentencing provisions of our Code of Criminal Justice." Id. at 71.

Exercising our deferential standard of review, we are satisfied that the sentencing judge adhered to sentencing guidelines and relied upon competent and credible evidence, and the sentence was not "clearly unreasonable so as to shock the judicial conscience." Id. at 70 (quoting Roth, 95 N.J. at 365).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2308-18T3