**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4504-19

STATE OF NEW JERSEY,

     Plaintiff/Respondent,

v.

JAMES S. GOYDOS,

     Defendant/Appellant.

_____

Argued November 30, 2021 – Decided January 25, 2022

Before Judges Currier, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Number 18-12-1698.

Philip Nettl argued the cause for appellant (Benedict and Altman, attorneys; Philip Nettl, on the briefs).

David M. Liston, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

PER CURIAM

Under a plea agreement, defendant agreed to a sentence of up to 364 days of jail time and four years of probation. The State agreed to recommend the dismissal of numerous counts of the indictment. The court sentenced defendant to a four-year term of probation conditioned on defendant serving 300 days in the county jail. Defendant's subsequent motion to reduce his sentence was denied. We affirm.

Defendant was a surgeon at Rutgers Cancer Institute (Institute) and a professor of surgery at Rutgers Medical School. He was charged in a 160-count indictment with multiple counts of official misconduct, computer theft, burglary, invasion of privacy, impersonation, and possession of an assault weapon. The charges rose from the discovery of a hidden camera in a women's bathroom at the Institute, videos of women using the bathroom found on the Institute director's office computer, sightings of defendant using the director's office without permission, and a rifle found in defendant's basement during the execution of a search warrant.[1] Covert recording devices found during the search of defendant's home matched the recording equipment found in the director's office.

---

[1] Defendant told police that his brother gave him the firearm in the 1990s.

A-4504-19

In a negotiated plea agreement, defendant pleaded guilty to second-degree computer theft, N.J.S.A. 2C:20-25(e); second-degree official misconduct, N.J.S.A. 2C:30-2(a); second-degree possession of an assault rifle, N.J.S.A. 2C:39-5(f); third-degree burglary, N.J.S.A. 2C:18-2(a)(1); third-degree computer theft, N.J.S.A. 2C:20-25(a); and fourth-degree impersonation, N.J.S.A. 2C:21-17(a)(4). The State agreed to dismiss the 116 counts of invasion of privacy regarding the hidden cameras.

Defense counsel established a factual basis during the plea hearing that defendant entered the director's suite at the Institute "to obtain [and take] information that [he] knew that [he was] not entitled to" "at a time when [he was] not licensed or privileged . . . ." He took the information for the purpose of using the information "for [his] own benefit or the benefit of another."

Defendant admitted he obtained information from a computer in the director's suite that he was not authorized to use and he was not permitted to access the information. Defendant agreed he "purposely" took the information from the computer because he knew "it was going to be useful" to him or to someone else and he "knew that [he] didn't have permission to take the information from the computer . . . ."

A-4504-19

Defendant further admitted that he obtained "credentials, log-in information, things of that nature" from the director's assistant's computer "and by . . . using those credentials, [he] made it look like it was [the director's assistant] accessing the information as opposed to [himself] . . . ." Defendant was "impersonating [the director's assistant] . . . by using the credentials."[2] Defendant agreed he did so to benefit his employment or "the employment of others."

Defendant acknowledged he was a public employee when he committed the offenses. He also admitted that his position with Rutgers Medical School and the Institute gave him "freedom of movement" that made it possible for him to access the director's office suite and the assistant's computer in that suite.

The sentencing hearing took place on July 7, 2020. Initially, the court executed a consent order preventing defendant from any future public employment in New Jersey. The court also granted the State's motion for a waiver of the mandatory prison term under the Graves Act, N.J.S.A. 2C:43-6(c),

---

[2] Defendant admitted that some of the information obtained while impersonating the director's assistant was personal information belonging to the director including his date of birth, social security number, and other personal identifiers.

A-4504-19

stating "there was no criminal act committed with [the assault rifle]" and defendant had "no history of violence . . . ."

Two of defendant's former colleagues spoke on his behalf. The court then permitted victims to speak. The Institute director and their assistant who was impersonated by defendant spoke about the circumstances underlying the counts to which defendant pleaded guilty. In addition, they and two other individuals testified about the humiliation and embarrassment they experienced after learning defendant had secretly recorded women using the ladies' restroom.

After the speakers concluded their remarks, defense counsel requested a sidebar conversation. He told the judge that, although he believed victims could speak regarding facts concerning dismissed counts, one of the speakers had completely misstated a particular fact. Counsel did not ask the judge to take any action, he just wanted to make sure the court was aware of the mistake in the statement.

In considering the mitigating factors requested by defendant, the court found N.J.S.A. 2C:44-1(b)(6) applicable and gave that factor "slight to moderate weight" because defendant indicated he "is willing to participate in community programs . . . ." The court also found N.J.S.A. 2C:44-1(b)(7) applicable and

gave it "significant weight" because defendant had "no history . . . of criminal activity."

In considering N.J.S.A. 2C:44-1(b)(8), the judge found the factor applicable and assigned it "moderate weight." He noted that defendant would not be working at Rutgers or the Institute again and "his conduct has had devastating consequences to his own reputation, livelihood, and that of his family and employment" and therefore it was "unlikely that this conduct would ever be repeated . . . ."

In finding N.J.S.A. 2C:44-1(b)(9) applicable, the judge gave it "moderate weight." He stated, "[T]here ha[ve] been numerous letters submitted regarding [defendant's] character, his position, his life as a surgeon . . . . I don't find there's a serious risk of re-offense under all these circumstances." The court also found N.J.S.A. 2C:44-1(b)(10) applicable and gave it "moderate to significant weight." The court explained that "[defendant] has no priors, no subsequent [criminal history], [and] has otherwise led a law-abiding life."

The court found two aggravating factors applicable. He assigned "moderate weight" to N.J.S.A. 2C:44-1(a)(4) "because of the nature of [defendant's] conduct" and "what [defendant] pled to, as a public employee engaged in actions to gain access to a director's or assistant's computer, and then

6

attempt[ing] to use that, all while in the context of a public entity certainly does apply to this case . . . ."

The court also found N.J.S.A. 2C:44-(a)(9) applicable. The judge stated that specific deterrence "is necessary and does apply" and gave it "slight weight." As to general deterrence, the court gave it "slight to moderate weight" because "there has to be a clear message to the community that this type of conduct cannot be tolerated . . . ."

The judge then stated that his sentence was only based on the aggravating and mitigating factors, and "tailor[ed]" to the counts to which defendant had pleaded guilty.

Thereafter, the court sentenced defendant to "four years of probation with 300 days in the county jail." Due to COVID-19 concerns, the court postponed the commencement of defendant's jail sentence until mid-September.

Defendant filed a motion under Rule 3:21-10 to reduce or change his sentence, asserting the court had improperly relied on allegations in dismissed counts, and failed to justify the imposition of a custodial sentence. On September 14, 2020, the court denied the motion in a thorough oral decision in which the judge carefully explained the reasons behind the imposed sentence

and reiterated his findings on the aggravating and mitigating factors. The judge granted defendant's motion for bail pending the resolution of his appeal.

On appeal, defendant raises the following points:

> I. THE IMPOSITION OF A CUSTODIAL TERM AS A CONDITION OF PROBATION WAS AN ABUSE OF DISCRETION, CONSIDERING THE FACTUAL FINDINGS OF THE SENTENCING COURT
>
> II. THE SENTENCING COURT IMPROPERLY APPLIED THE "ABUSE OF PUBLIC TRUST" AGGRAVATING FACTOR
>
> III. THE SENTENCING COURT IMPROPERLY CONSIDERED THE VICTIM IMPACT STATEMENTS OF INDIVIDUALS WHO WERE NOT VICTIMS OF THE CRIMES TO WHICH DEFENDANT PLED GUILTY

We review a court's sentence for an abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018). We defer to the sentencing court's factual findings and do not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014).

If the sentencing court "follow[ed] the [Criminal] Code and the basic precepts that channel sentencing discretion," the reviewing court should affirm the sentence, so long as the sentence does not "shock the judicial conscience." Ibid. Therefore, we will "affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the

record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Defendant contends the trial court abused its discretion in sentencing him to a custodial term of 300 days in county jail as a condition of probation. We disagree.

Here, defendant entered a plea agreement which included four years' probation conditioned on a term of 364 days in the county jail. We accord additional deference where a sentence is imposed pursuant to a plea agreement. "A sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily '[waived] . . . his right to a trial in return for the reduction or dismissal of certain charges, recommendations as to sentence and the like.'" State v. Fuentes, 217 N.J. 57, 70-71 (2014) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)). Defendant was sentenced within the plea recommendation and therefore there is a presumption of reasonableness.

When a court sentences a defendant to probation, "it shall attach such reasonable conditions . . . as it deems necessary to insure that he will lead a law-abiding life or is likely to assist him to do so." N.J.S.A. 2C:45-1(a)(1). "When the court sentences a person who has been convicted of a crime to be placed on

A-4504-19

probation, it may require him to serve a term of imprisonment not exceeding 364 days as an additional condition of its order." N.J.S.A. 2C:45-1(e). When imposing a sentence of imprisonment, "the sentencing court shall specifically place on the record the reasons which justify the sentence imposed." Ibid.

The trial judge complied with the statutory requirements. He noted the plea agreement included a 364-day custodial term. In imposing a 300-day term, the judge explained that a custodial term was necessary to deter defendant in light of "the seriousness of the offenses," which included "three second[-]degree offenses" and involved "deliberate" and "deceptive practices" by defendant while in a "public position of trust."

The court also painstakingly addressed the aggravating and mitigating factors requested by defense counsel and the State, finding mitigating factors six, seven, eight, nine, and ten applicable and they outweighed the two germane aggravating factors.

The court applied the weight of the sentencing factors in its decision to waive the mandatory minimum sentence for official misconduct, N.J.S.A. 2C:30-2(a), finding that "imprisonment would result in serious injustice." The court made a similar conclusion with respect to the second-degree computer crimes, N.J.S.A. 2C:20-25, and "dispense[d] with imposing a mandatory

minimum term," stating defendant did not gain "some type of political or monetary advantage or benefits" and therefore "in light of the circumstance here . . . it would be an injustice to impose the mandatory minimum . . . ."

Although the court gave "heavier weight . . . to the mitigating factors," the court did not abuse its discretion when sentencing defendant to a custodial term. "[A]ggravating and mitigating factors . . . should bear on the range of sentence passed . . . and the decision to downgrade or impose parole ineligibility." State v. Hodge, 95 N.J. 369, 377 (1984). However, "the sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant." Ibid.

"The paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." State v. Megargel, 143 N.J. 484, 500 (1996).

Defendant pleaded guilty to multiple charges that typically require a person to serve years in state prison without parole eligibility. However, the judge stated he was "satisfied [he could] sentence outside the second[-]degree mandatory terms of state prison" "based on the person that stands before the [c]ourt today" and "based on the aggravating and mitigating factors." Therefore,

11

the court sentenced defendant to four years of probation conditioned on 300 days in the county jail.

During the subsequent motion hearing, the judge again explained his decision to sentence defendant to a 300-day jail term. He reasoned:

> [E]ven though the [c]ourt found the mitigating factors outweigh[ed] the aggravating [factors], that it did cry out for some deterrence, the message being that a person cannot abuse a position of trust and to both specifically deter and the need for general deterrence by way of a message to the community that violators of such crimes and conduct cannot be tolerated and would be punished.
>
> The [d]efendant's character and condition is not so highly unusual or unique that some jail time would be a serious injustice overriding the concern for deterrence.
>
> . . . .
>
> And then in this case the need to deter was particularly meaningful because of the nature of the conduct, meaning again the public trust, and the need to deter both the individual and . . . the conduct itself and the societal need that public employees should be punished for this type of . . . conduct. Because these acts were deliberate.

The court did not abuse its discretion in imposing a 300-day county jail sentence. The defendant voluntarily entered into the plea agreement, which included a jail term of up to 364 days. The court made thorough findings

12

regarding the mitigating and aggravating factors. The sentence does not shock the judicial conscience.

Defendant also contends that the sentencing court engaged in impermissible double counting by finding aggravating factor four, N.J.S.A. 2C:44-1(a)(4). He asserts that aggravating factor four "double counts an element of Official Misconduct[,] [N.J.S.A. 2C:30-2(a).]"

Double counting occurs when facts that establish elements of a crime are considered as aggravating circumstances in determining that sentence. Fuentes, 217 N.J. at 75 (citing State v. Yarbough, 100 N.J. 627, 645 (1985)). However, a court "does not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense." State v. A.T.C., 454 N.J. Super. 235, 254-55 (App. Div. 2018).

Defendant pleaded guilty to second-degree official misconduct, N.J.S.A. 2C:30-2(a), which states that:

> A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
>
> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he

is committing such act in an unauthorized manner
. . . .

Aggravating factor four is applicable where "[a] lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust under chapters 27 and 30 of this title, or the defendant took advantage of a position of trust or confidence to commit the offense." N.J.S.A. 2C:44-1(a)(4).

Defendant argues that the court did not distinguish the aggravating factor from the elements of official misconduct. We disagree. In considering the applicability of aggravating factor four, the court stated:

> [T]hat [factor] does apply because this is a public entity. And because of that, and because of the nature of the conduct and what the doctor pled to, as a public employee engaged in actions to gain access to a director's or assistant's computer, and then attempt to use that, all while in the context of a public entity certainly does apply to this case, and I give that moderate weight.

The court properly found aggravating factor four applicable based on the factual basis of defendant's plea where he conceded his "freedom of movement within the Cancer Center" and his position at the Institute allowed him to access the director's suite. Defendant took advantage of his position of trust and confidence within the Institute and was able to commit the crime due to his

14

position there. Therefore, the court's finding of aggravating factor four was supported by the record and was not impermissible double counting.

Defendant next contends it was improper for two victims of the women's restroom camera offenses to give victim impact statements at sentencing because defendant did not plead guilty to those charges. He further asserts "the sentencing court abused its discretion by permitting an excessive presentation of victim impact statements."

Defense counsel did not object to these victims speaking during the sentencing hearing. Therefore, we review the argument for plain error, and "consider whether defendant's claim of error was 'clearly capable of producing an unjust result.'" State v. Munafo, 222 N.J. 480, 488 (2015) (quoting R. 2:10-2).

There was no harm in allowing additional victim statements. The judge made it clear during sentencing that he would not consider the women's statements because they were unrelated to the offenses defendant pleaded guilty to. He explained: "I'm mindful of the hurt that's been sustained by the victims . . . . I have to tailor, however, my sentencing to what he's pled guilty to."

In addition, the court not only sentenced defendant in accordance with the negotiated plea agreement, but it actually imposed a lesser custodial term than

A-4504-19

requested by the State. Therefore, the record does not support defendant's contention that the invasion of privacy victim statements caused the court to enhance defendant's sentence or caused defendant to suffer an unjust result. See State v. Melvin, 248 N.J. 321, 326 (2021) (holding "fundamental fairness prohibits courts from subjecting a defendant to enhanced sentencing for conduct as to which a jury found that defendant not guilty.").

Affirmed. The stay is vacated, and bail is revoked. Defendant shall surrender to the county jail to begin his sentence within five days of the date of this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4504-19